A04A1002. GEORGIA DEPARTMENT OF TRANSPORTATION
v. THOMPSON.
(606 SE2d 323)

MIKELL, Judge.

We granted the Georgia Department of Transportation's ("DOT") application for interlocutory review of the trial court's order denying its motion for summary judgment in this premises liability case to determine whether the Recreational Property Act ("RPA"), OCGA § 51-3-20 et seq., which limits landowners' liability for injuries occurring on property used for recreational purposes, applies to rest areas maintained by the DOT. We conclude that it does and, therefore, we reverse the trial court's judgment.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclu-

---

sions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that on August 19, 2000, Gussie Marie Thompson, who was 81 or 82 years old, was traveling from Florida to Tennessee with her daughter and son-in-law in a motor home when they stopped at Rest Area No. 5 on Interstate 75 in Cook County so that her son-in-law could check the oil in the vehicle's engine. Ms. Thompson deposed that she decided to take out the garbage while her daughter walked the dog. While attempting to place the small bag of garbage in the trash container, her feet slipped out from under her, and she fell, breaking her hip. The trash container was sitting on top of a concrete catch basin, or "storm drain." Apparently, Ms. Thompson missed the curb at the edge of the storm drain and stepped in the opening between the drain and the curb.

Ms. Thompson admitted that her vision was poor. However, she contended that the morning sun cast a shadow over the curb, concealing the opening to the storm drain. She asserted that the DOT was negligent in placing the trash can on top of the storm drain, because it required her to negotiate the concrete curb.

Joseph Eugene Cowan, a DOT construction engineer who examined the catch basin after the accident, testified that the height of the opening measured a standard five and one-half inches and that he observed no safety problems in the structure. Cowan, who had been the area engineer for six years, also deposed that he did not recall anyone ever tripping and falling at the mouth of a catch basin at the rest area. Jerry Wayne Stinson, Jr., a DOT maintenance engineer, testified that it never occurred to him that anyone would have difficulty negotiating the catch basin. However, he also deposed that after this incident, he instructed workers at the rest area to move the trash cans.

Ms. Thompson sued the DOT in two counts: premises liability and negligence per se. The DOT moved for summary judgment, alleging that the RPA precluded Ms. Thompson's recovery as a matter of law. Alternatively, the DOT asserted that if the RPA did not apply, Ms. Thompson was a licensee, and the condition that caused her injury was a passive or static condition and not a hidden peril, so that the DOT could only be held liable for wilful or wanton actions. As there was no evidence that the DOT's actions were wilful or wanton,

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

the DOT contended that it was entitled to summary judgment. The trial court denied the motion in a one-sentence order and then issued a certificate of immediate review. We granted the DOT's application for interlocutory appeal.

1. Whether a rest area comes within the RPA is a matter of first impression in Georgia. However, the Supreme Court recently issued guidelines for determining whether application of the RPA is a question of law for the trial court to resolve or a question of fact for a jury.

> [W]hether the RPA applies to limit the liability of the owner of a certain property at a certain time is a question of law for the trial court. However, determination of the purpose for which the public was permitted on the property involves the examination and weighing of evidence in those instances in which there exist both commercial and recreational aspects to the property in issue. Where that evidence conflicts regarding the purpose of the property, it is for the fact finder to resolve the conflict.[2]

The property in this case is a rest area, which is defined by OCGA § 32-6-71 (20) as "an area or site established and maintained within or adjacent to the highway right of way, by or under public supervision or control, for the convenience of the traveling public." There is no allegation that the property is operated for a commercial purpose or pecuniary gain. Accordingly, the determination of whether a rest area is used for a "recreational purpose" as defined by the RPA is a question of law that we resolve today.

The purpose of the RPA is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes."[3] The RPA applies to both private and public owners of land.[4] To effectuate its purpose, the legislature has limited the landowner's liability as follows:

> In essence, the [RPA] specifies that "an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes" may not be held liable for personal injuries resulting from unsafe or defective conditions existing on the premises,

---

[2] (Citation, punctuation and footnote omitted.) *Atlanta Committee for the Olympic Games v. Hawthorne*, 278 Ga. 116, 117 (1) (598 SE2d 471) (2004) ("*ACOG II*").

[3] OCGA § 51-3-20.

[4] *Welch v. Douglas County*, 199 Ga. App. 269 (1) (404 SE2d 450) (1991).

unless such injuries resulted from "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity."[5]

Accordingly, the first question for decision is whether a rest area is used for a recreational purpose. Under the RPA,

"Recreational purpose" includes, but is not limited to, any of the following or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites.[6]

According to our Supreme Court, this language is not meant to limit the activities to those specified in the Code section, but encompasses "any recreational activity, i.e., any amusement, play or other form of relaxation which refreshes the mind or body."[7] As stated above, a rest area is "established and maintained . . . for the convenience of the traveling public."[8] In accordance with this statutory mandate, the DOT equips the rest area with restrooms, picnic tables, water fountains, vending machines, parking areas, grassy areas, a pet area, and sidewalks. In our view, the ability to picnic, quench one's thirst, use the restroom, and stroll, with or without one's pet, encompasses forms of relaxation which refresh the mind or body.[9] Therefore, we hold that a rest area, as defined by OCGA § 32-6-71 (20), constitutes property used for recreational purposes within the meaning of the RPA.

Our conclusion finds support in at least one other jurisdiction. In Minnesota, a rest area is defined as part of the state outdoor recreational system.[10] The purpose of the rest area is "to promote a safe, pleasurable, and informative travel experience along Minnesota highways by providing areas and facilities at reasonable intervals for

---

[5] *Hogue v. Stone Mountain Mem. Assn.*, 183 Ga. App. 378-379 (358 SE2d 852) (1987), citing OCGA §§ 51-3-23 and 51-3-25 (1). See also *Lee v. Dept. of Natural Resources*, 263 Ga. App. 491, 493 (3) (588 SE2d 260) (2003) (summary judgment for DNR affirmed in suit brought by spouse of camper who sustained injuries when she tripped and fell over debris near restroom area on Ossabaw Island).

[6] OCGA § 51-3-21 (4).

[7] *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 115 (1) (a) (537 SE2d 345) (2000) ("*ACOG I*").

[8] OCGA § 32-6-71 (20).

[9] *ACOG I*, supra.

[10] Minn. Stat. § 86A.04 (2003).

information, emergencies, or the rest and comfort of travelers."[11] Minnesota law grants immunity to the government for claims arising out of the use of its outdoor recreational system, except that the state is liable if it engages in conduct that would permit a trespasser to recover damages against an individual.[12] Construing this statutory scheme, the Minnesota Court of Appeals affirmed a summary judgment granted to the state in a premises liability action brought by a woman who was injured when she tripped and fell over a raised sidewalk joint at an information center located in a state rest area.[13] Although, in Georgia, a state rest area is not statutorily defined as recreational, we are nevertheless persuaded by the similarity of the purpose for which rest areas are established and maintained in the two states — the comfort and convenience of the traveling public — that the Minnesota approach is correct. Accordingly, for this reason as well, we hold that a state rest area is property used for a recreational purpose under the RPA.

2. Given the applicability of the RPA to rest areas maintained by the DOT, Ms. Thompson would be required to prove that the DOT fell within one of the two exceptions to the RPA in order to survive summary judgment.[14] This she did not do.

(a) The first exception to the immunity granted to landowners by the RPA, known as the "willful and malicious" exception, provides that the RPA does not limit the liability of owners of property "[f]or willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity."[15]

A wilful failure to guard or warn would require actual knowledge of the owner that its property is being used for recreational purposes; that a condition exists involving an unreasonable risk of death or serious bodily harm; that the condition is not apparent to those using the property; and that having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences. This test excludes either constructive knowledge or a duty to inspect.[16]

First, we note that Ms. Thompson has not alleged, either in her complaint, her amended complaint, or her appellate brief that the

---

[11] Minn. Stat. § 86A.05, subd. 12 (a) (2003).
[12] Minn. Stat. § 3.736, subd. 3 (i) (2003).
[13] *Johnson v. State*, 478 NW2d 769, 770-771 (Minn. App. 1991).
[14] See OCGA § 51-3-25 (1), (2).
[15] OCGA § 51-3-25 (1).
[16] (Punctuation omitted.) *Ga. Marble Co. v. Warren*, 183 Ga. App. 866, 867 (1) (360 SE2d 286) (1987).

DOT's actions in placing the trash can on top of the storm drain were wilful or malicious; rather, she contends that those actions were negligent. Second, she has provided no evidence that the storm drain was not constructed to proper standards or that it posed an unreasonable risk of death or serious bodily harm. Finally, there was no evidence that the DOT had actual knowledge of a condition that was not apparent to persons using the property.

We reached the same result on similar facts in *Spivey v. City of Baxley*.[17] In that case, Mrs. Spivey was injured while attending a church softball game at a public recreational facility when she stepped from a concrete slab, which covered a drainage area, into the mouth of a storm drain.[18] In affirming the trial court's grant of summary judgment to the defendants, we rejected her claim that the wilful and malicious exception applied because the defendants knew of the dangerous condition but chose not to warn of it. We noted that "[t]here was no evidence of any prior accidents which had been caused by the concrete covers, nor was there any evidence that the responsible authorities were aware of any danger associated with the concrete covers."[19] Here, too, there is no evidence that the DOT was aware of any danger associated with the placement of the trash cans on the concrete storm drains. *Spivey* is apposite and controlling. It follows that Ms. Thompson cannot rely on the wilful and malicious exception to the RPA.[20]

Ms. Thompson argues, however, that the placement of the trash can so as to obscure the storm drain was a hidden peril, such that the DOT owed her a duty of ordinary care to prevent injury. She cites the principle that "it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises."[21] This principle, though correctly quoted, does not apply to injuries arising from a dangerous static condition. For such condition, the rule is as follows:

> Although a landowner owes a duty to use ordinary care to protect anticipated licensees from dangerous activities being conducted on the premises or from hidden perils, where the alleged negligence arises from a dangerous static condition on the premises, the duty remains not to injure the

---

[17] 210 Ga. App. 772 (437 SE2d 623) (1993).

[18] Id.

[19] Id. at 773-774

[20] OCGA § 51-3-25 (1).

[21] (Citations and punctuation omitted.) *Williams v. Truett*, 251 Ga. App. 46, 47 (553 SE2d 350) (2001); accord *Hicks v. Walker*, 262 Ga. App. 216, 218 (585 SE2d 83) (2003).

licensee wilfully or wantonly.[22]

In the case at bar, the allegedly dangerous condition — a trash container sitting on top of a concrete storm drain — was both static and passive.[23] Consequently, the DOT owed a duty not to wilfully or wantonly injure Ms. Thompson. As there was no evidence that the DOT breached this duty, this exception does not apply.

(b) Second, the RPA does not limit the liability of owners of property who charge a fee for the use of the property.[24] "Charge" is defined as "the admission price or fee asked in return for invitation or permission to enter or go upon the land."[25] As there is no evidence that the DOT charges a fee for the use of its rest areas, this exception fails as well. It follows that the trial court erred in denying the DOT's motion for summary judgment.

*Judgment reversed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 1, 2004 — 

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Jeffrey W. Stump, Assistant Attorneys General*, for appellant.
*Fulp & Holt, Carl G. Fulp III*, for appellee.

---

[22] (Citations omitted.) *Rice v. Elliott*, 256 Ga. App. 87 (567 SE2d 721) (2002) (child injured on skating ramp). See also *Aldredge v. Symbas*, 248 Ga. App. 578, 581 (547 SE2d 295) (2001) (officer fell into drainage ditch obscured by foliage).

[23] See *Gray v. Oliver*, 242 Ga. App. 533, 535 (1) (530 SE2d 241) (2000) (curbside drainage culvert was a static condition); *MARTA v. Fife*, 220 Ga. App. 298, 300 (2) (469 SE2d 420) (1996) (drainage culvert located underneath manhole cover next to curb was a static condition).

[24] See OCGA §§ 51-3-23; 51-3-25 (2).

[25] OCGA § 51-3-21 (1).