A06A0383. MATHESON et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.
(633 SE2d 569)

SMITH, Presiding Judge.

This appeal involves the scope and application of the Georgia Recreational Property Act (RPA), OCGA §§ 51-3-20 through 51-3-26. Deborah Matheson and her husband, Walter Matheson, appeal from the trial court's grant of summary judgment to the Georgia Department of Transportation (GDOT) in their suit seeking damages for personal injury and loss of consortium. In the Mathesons' four enumerations of error, they contend that the RPA, which limits the liability of landowners in certain situations, does not apply to the facts of this case. We find no merit in any of their contentions, and we therefore affirm the trial court's grant of summary judgment to GDOT.

Summary judgment is proper when the moving party shows that no genuine issue of material fact exists, and that, when viewed in the light most favorable to the respondent, the undisputed facts warrant judgment as a matter of law.

(Citation omitted.) *Soto v. CarMax Auto Superstores*, 271 Ga. App. 813, 815 (1) (a) (611 SE2d 108) (2005).

Viewing the evidence favorably to the Mathesons, the record shows that Deborah Matheson and several co-workers were returning by bus from a convention in Alabama when the bus stopped at the Tallapoosa Welcome Center. After using the restroom, she "milled around," perusing brochures, choosing several, and picking out a book for her daughters. When it was time to return to the bus Matheson walked to the parking area on a paved path. As she crossed the picnic area she tripped and fell forward, striking her head, possibly on a cement structure.

The Tallapoosa Welcome Center meets the definition of a "safety rest area" or "rest area" in OCGA § 32-6-71; it is "an area or site established and maintained within or adjacent to the highway right of way, by or under public supervision or control, for the convenience of the traveling public." OCGA § 32-6-71 (20). The Tallapoosa safety rest area includes restrooms, picnic tables and benches, water fountains, vending machines, grassy areas, a pet area, and sidewalks, and it is maintained by the GDOT.

It is undisputed that the Tallapoosa Welcome Center also includes an "information center," which is defined in OCGA § 32-6-71 (8) as "an area or site established and maintained at a safety rest area for the purpose of informing the public of places of interest within the state and providing such other information as the department may consider desirable." The information center is operated and staffed by the Georgia Department of Economic Development[1] (GDED). According to the GDED, its overall purpose is "to encourage travelers to visit Georgia's communities and attractions" by increasing "the number of people who make a conscious decision to participate in a tourism activity they had not planned prior to entering a center."

In their four somewhat overlapping enumerations of error, the Mathesons contend that the trial court erred in failing to allow a jury to determine the purpose for which the public was permitted access to the welcome center; that the trial court erred in its analysis by considering the information center separately from the rest area; that the trial court should not have followed this court's decision in

---

[1] The GDED was formerly known as the Georgia Department of Industry, Trade & Tourism.

*Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265 (606 SE2d 323) (2004), because *Thompson* was "wrongly decided"; and that the RPA is not applicable to these facts.

1. We first address the Mathesons' contention that the RPA does not apply to the Tallapoosa Welcome Center, which includes the visitor information center.

The stated purpose of the RPA "is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes." OCGA § 51-3-20. It provides, with specific exceptions expressly stated in OCGA § 51-3-25, that "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give warning of a dangerous condition, use, structure, or activity on the premises to persons entering for recreational purposes." OCGA § 51-3-22. A landowner does not incur liability for injuries on such property. OCGA § 51-3-23 (3). The only exceptions to this exemption from liability are for "willful or malicious failure to guard or warn against" dangers, or for injuries suffered when the landowner charges a fee for recreational use of the property. OCGA § 51-3-25. No dispute exists that these exceptions are not applicable here.

(a) The Mathesons argue that the RPA cannot be applied to land owned by the State. The Georgia Supreme Court has explicitly rejected that interpretation, holding that nothing in the RPA indicates the General Assembly's intention to limit the statute's application to privately held land. *Stone Mountain Mem. Assn. v. Herrington*, 225 Ga. 746, 748-749 (2) (171 SE2d 521) (1969).

We reject the Mathesons' argument that enactment of the Georgia Tort Claims Act, OCGA §§ 50-21-20 through 50-21-37, changed the application of the RPA. As did the plaintiff in *Welch v. Douglas County*, 199 Ga. App. 269 (404 SE2d 450) (1991), the Mathesons "confuse[ ] sovereign immunity with the specific limitation of duty granted to any landowner, public or private, by the Recreational Property Act." Id. at 270 (1). OCGA § 50-21-23 (b) provides that "[t]he state waives its *sovereign* immunity only to the extent and in the manner provided in this article." (Emphasis supplied.) The immunity claimed by the GDOT here is not "sovereign" immunity; it is an immunity granted by statute to an owner who invites the public onto land for recreational purposes without charging a fee.

(b) The Mathesons also argue that the RPA does not apply here because the property was commercial rather than recreational, within the meaning of the RPA. They acknowledge that the welcome center does have a recreational component, consisting of the rest area, including the rest rooms, picnic benches, and other amenities. They contend, however, that the primary purpose of the welcome center is

promotion of local businesses, which is a commercial purpose. We disagree for several reasons.

First, our Supreme Court recognized in *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 116 (2) (537 SE2d 345) (2000), that for the RPA to apply, it is not necessary that the property be used for " 'sheer recreational pleasure.' " Id. A single property may have several different uses, and a visitor information center never stands alone. It is defined by statute as part of a rest area. OCGA § 32-6-71 (8). In addition, this court has held that highway rest areas are recreational. *Thompson*, supra at 267 (1). Because a rest area is recreational and a visitor information center is a small part of the rest area, logic dictates that the primary purpose of the welcome center must also be recreational, even if one component is commercial.

Moreover, in determining whether a property is commercial or recreational, "the important criterion is the purpose for which the public is permitted on the property. If the public is invited to further the business interests of the owner — e.g., for sales of food, merchandise, services, etc. — then the RPA will not shield the owner from liability even though the public receives some recreation as a side benefit." (Citation and punctuation omitted.) *Anderson*, supra at 116.

In this case, the *State* owns the property. Even if the activity at the information center is viewed as "commercial" in nature, the commerce involved arises from some possible future increase in the profits earned by *local businesses*, not the State. The State does not permit travelers access to its property so it can make a profit by selling brochures; most of the literature available at the information center is provided by local merchants and is free to the public.[2] Because the property, including the information center, is recreational in nature, the trial court did not err in ruling that the RPA applies.

2. Because the property in issue is wholly recreational, we need not consider whether the trial court erred in considering the rest area and the information center separately.

3. The Mathesons maintain that the trial court erred in failing to allow a jury to decide the issue of the purpose for which the public was allowed access to the property. Determining the purpose for which the public was permitted to enter a particular property is a jury question when the property has a mixed use, because it involves examining and weighing the evidence. *Atlanta Committee for the Olympic*

---

[2] While the State may eventually "profit" by increasing its tax revenue if local merchants do more business, the connection between the brochures and the State's eventual and hypothetical "profit" is far too tenuous to render the venture commercial.

*Games v. Hawthorne,* 278 Ga. 116, 117 (1) (598 SE2d 471) (2004). No jury question exists, however, unless the property has both commercial and recreational aspects and the evidence presented is in conflict. Id. Here, contrary to the Mathesons' argument and as we have held in Division 1 (b), the welcome center is not a "mixed-use property" because the information center is not a commercial venture.

4. Finally, the Mathesons assert that *Thompson,* supra at 265, was "wrongly decided" and should be overruled. We do not agree, and we decline to overrule it. Faced with an issue of first impression, this court held in *Thompson,* supra, that a highway rest area is used for a "recreational purpose." Id. at 269 (1). Contrary to the Mathesons' contention, this court's holding in *Thompson* that highway rest areas are "recreational" relies upon and comports completely with the Supreme Court's decisions in *Anderson* and *Hawthorne.* In *Thompson,* this court relied upon the stated purpose of the statute itself and on *Anderson. Thompson,* supra at 268, n. 7. In *Anderson,* the Supreme Court held that "recreation" encompasses "any amusement, play or other form of relaxation which refreshes the mind or body. [Cit.]" Id. at 115 (1) (a). As this court held in *Thompson,* clearly "the ability to picnic, quench one's thirst, use the restroom, and stroll, with or without one's pet, encompasses forms of relaxation which refresh the mind or body. [Cit.]" Id. at 268.

Because the RPA applies here, the State is shielded from liability for Matheson's injuries, and the trial court did not err in granting summary judgment to the GDOT.

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED JUNE 16, 2006 —
RECONSIDERATIONS DENIED JUNE 29, 2006.

*Casey, Gilson & Leibel, George P. Shingler, Michael L. Neff,* for appellants.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Robert C. Edwards, Loretta L. Pinkston, Assistant Attorneys General,* for appellee.