## A06A1741. HURST v. EVANS.
### (643 SE2d 824)

RUFFIN, Judge.

Tommie E. Evans filed a complaint to invalidate an allegedly forged quitclaim deed, which transferred his interest in property to his wife, Barbara Evans. The trial court granted Evans's motion for summary judgment and the defendant appeals, alleging 17 enumerations of error.[1] We reverse, for reasons that follow.

Construing the evidence most favorably toward Hurst,[2] the record shows that Tommie E. Evans owned a financial services company. Mrs. Evans was a secretary for a district director at the Department of Labor. Mr. and Mrs. Evans filed a Chapter 7 bankruptcy in 1990. Although Mrs. Evans was not authorized to sign checks on Evans's bank accounts, he asked her to write — and

---

[1] The Supreme Court of Georgia transferred the appeal to this Court on grounds that the relief sought did not fall within the Supreme Court's title to land jurisdiction.

[2] See *Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265, 265-266 (606 SE2d 323) (2004).

presumably sign his name to — checks from his personal account on more than one occasion to pay his bills. On May 20, 1994, Evans signed a deed transferring a five-acre tract of land and an 18.702-acre tract of land to his wife so that she could obtain a second mortgage through her credit union; the deed listed "love and affection" as the consideration for the transfer.[3] Although Mrs. Evans recalls that her husband transferred the two tracts to her, she does not recall his reason for doing so.

Evans owned approximately 70 acres of land in Berrien County that he purchased from his mother.[4] On October 26, 1998, Mrs. Evans signed Evans's name to a warranty deed transferring the property to herself. Both Mr. and Mrs. Evans contend that Mrs. Evans signed his name without his consent or knowledge. In her deposition, Mrs. Evans states that she "[did not] recall" why she did so; in her affidavit, she indicates that she signed her husband's name because she believed that "[she] had authority to d[o] so[,] as [she] was attempting to manage [their] family's finances." After she signed Evans's name, Mrs. Evans had the deed notarized by a co-worker and then took it to the courthouse and had it recorded.

Beginning in 1998 or 1999, the tax bills for the property at issue listed Mrs. Evans as the owner and were mailed to the Evanses. In his affidavit, Evans maintains that he paid the property taxes for the property "[a]t all times." Evans asserts that although he wrote the checks for the property taxes, he never actually saw the tax bills; instead, Mrs. Evans told him the amount owed.[5] However, according to the tax commissioner for Berrien County, Evans paid the property taxes for 1998 and 2004, and Mrs. Evans paid them for 2005 and 1999 through 2003.

In 1999, Evans met Robert Wright, and the Evanses and the Wrights became friends, socializing "a couple of times a month" thereafter; the Evanses' son and the Wrights' daughter dated at one point. Thereafter, without Evans's knowledge or consent, Mrs. Evans borrowed $45,000 from Wright because of her "spending problem." Wright gave her the money in cash, in over ten increments. Mrs. Evans recalls that Wright asked her for a promissory note after she told him that her husband was unaware of the loans. Mrs. Evans typed the promissory note and had it notarized by a co-worker. The note requires Mrs. Evans to pay "equal monthly installments . . . until

---

[3] The Evanses' house sat on the five-acre tract of land.

[4] The warranty deed transferring the property from Virginia Evans to Tommie Evans was signed on July 22, 1997 and recorded on February 13, 1998.

[5] Evans testified that he had retrieved the mail from his mailbox only "two or three times in . . . five years."

November 12, 2012," but does not specify the amount of the payments. The note also provides that it is secured by a deed for the 70-acre tract of land in Mrs. Evans's name that she obtained by signing her husband's name to the deed. Mrs. Evans signed the deed to secure her debt to Wright on November 12, 2002, the same day that she signed the promissory note. Wright had the security deed recorded on July 3, 2003. Mrs. Evans testified that although she did recall that she made purchases with the loan proceeds, she was unable to recall any of the items purchased. When asked about the location of the items she bought with the $45,000 in loan proceeds, she replied, "I had yard sales. I gave it away."

In "early 2000," Evans wanted to purchase a 1.02-acre tract of land for his land investment corporation, Three Oaks. Because he was out of town, Evans asked his wife to purchase the property. Evans testified that it was "a possibility" that he gave Mrs. Evans permission to sign the sales contract for him and that she "could have" done so; he does recall that his wife "was authorized to deal with the bank[,] . . . the real estate agent[,] and the attorney for the real estate agent." Mrs. Evans purchased the property in her name, and in 2003, she deeded it to Three Oaks.

On February 19, 2004, Mrs. Evans filed for bankruptcy and listed the 70-acre property as her asset.[6] Evans testified at deposition that he did not know that his wife was going to file for bankruptcy until the day before she filed her petition. Although he was aware that his wife had credit cards, Evans did not realize how much debt she had accumulated.[7] When he saw that Mrs. Evans had listed the 70-acre tract of land as an asset in her bankruptcy petition, he learned for the first time that she had signed his name to the warranty deed. According to Evans, his wife never offered an explanation for her actions.

Mr. Evans sought relief from the bankruptcy stay so that he could file a quiet title action in superior court. On March 23, 2005, the bankruptcy court granted the relief on the condition that the bankruptcy trustee was named as a defendant in the action. Mr. Evans filed the instant case on May 13, 2005, naming the bankruptcy trustee, Kristin Hurst, as the defendant. On November 2, 2005, Evans filed a motion for summary judgment, contending that the warranty deed signed by his wife was invalid because she signed it without his authorization and it was notarized outside the presence of the signatory.

---

[6] Specifically, Mrs. Evans indicated that she owned a one-half interest in the property.

[7] In her bankruptcy petition, Mrs. Evans listed approximately $78,000 in credit card and open account debt.

In response to the motion for summary judgment, Hurst filed the affidavit of Walter W. Kelley, the trustee in Mrs. Evans's Chapter 7 bankruptcy case.[8] As trustee, Kelley determined that the security deed that Mrs. Evans gave to Wright was voidable under 11 USC § 544. As a result, he made a claim to avoid the property transfer and to liquidate the land, which had been appraised for $112,000. After he made the claim, Mrs. Evans's attorney advised him that the 1998 deed transferring the property from Evans to his wife was invalid because it was not properly witnessed. Mrs. Evans's attorney and Wright's attorney then advised Kelley that the land was worthless because it was landlocked by other land owned by Mrs. Evans. Next, one of the attorneys told Kelley that the 1998 deed was invalid because Evans lacked mental capacity. After Kelley disputed that these issues would prevent him from selling the property, he was finally advised that the deed was invalid because Evans had not signed it.

After oral argument and consideration of the evidence, the trial court granted Evans's motion for summary judgment. Specifically, the court concluded that Mrs. Evans signed Evans's name to the deed without his authorization, and that the deed was not properly attested, not properly witnessed, and not supported by consideration.

1. In multiple enumerations of error, Hurst challenges the trial court's grant of summary judgment to Evans. "Summary judgment should be granted only where undisputable facts exist on which reasonable minds could not differ."[9] Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[10] We apply a de novo standard of review to an appeal of a denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in a light most favorable to the nonmoving party, who is given the benefit of all possible inferences and reasonable doubts.[11] As our Supreme Court has stated, "[u]nder this standard, summary judgment rarely will be appropriate in an action under the [Quiet Title] Act."[12]

Hurst has demonstrated that disputed issues of material fact remain concerning Evans's equitable claim, through evidence including the Evanses' prior actions involving property transfers, the Evanses' apparent inability to recall particular relevant facts, Mrs.

---

[8] Mrs. Evans initially filed a Chapter 13 petition, but it was later converted to a Chapter 7 bankruptcy.

[9] Smith v. Ga. Kaolin Co., 264 Ga. 755, 756 (3) (449 SE2d 85) (1994).

[10] See OCGA § 9-11-56 (c).

[11] See Ga. Dept. of Transp., supra.

[12] Smith, supra at 757.

Evans's inconsistent statements, the Evanses' financial condition, the Evanses' testimony regarding payment of the tax bills for the property at issue, and Mrs. Evans's actions in her bankruptcy case. Thus, we reverse the grant of summary judgment to Evans and remand for further proceedings under the Quiet Title Act.[13]

2. In light of our holding in Division 1, we decline to address Hurst's remaining enumerations of error.

*Judgment reversed and case remanded. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 19, 2007.

*Kelley, Lovett & Blakey, Walter W. Kelley, Thomas D. Lovett,* for appellant.
*Smith, Hannan & Parker, Bradley M. Hannan,* for appellee.

