**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 28, 2021**

# In the Court of Appeals of Georgia

A21A0092. WATERS v. WATERS.

HODGES, Judge.

Daniel Waters filed the instant appeal after the trial court granted partial summary judgment in favor of his father, Wilson Waters, Sr., in a dispute regarding the validity of a warranty deed purporting to transfer ownership of 9.86 acres of real property located in Burke County from the father to the son. Because material questions of fact exist for resolution by a jury, we reverse the grant of summary judgment.

> On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. . . .. When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citation omitted.) *Estate of Fanning v. Estate of Fanning*, 354 Ga. App. 282 (840 SE2d 655) (2020). A party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). On a motion for summary judgment, when "it appears that the credibility of a witness or witnesses upon whose testimony the grant of the summary judgment depends is at issue in the case, neither the trial court nor this [C]ourt will resolve the matter or is concerned with the credibility but will leave this matter to the jury." (Citation and punctuation omitted.) *Patterson v. Wright*, 354 Ga. App. 286, 288 (2) (840 SE2d 762) (2020).

So viewed, the evidence shows that in 1999, Daniel Waters via a "Deed of Gift" transferred the property at issue to his father and to Jeannette Waters in fee simple for $1.00 consideration. Jeannette Waters, who was Wilson Waters' wife, died on November 1, 2018.

Daniel deposed that, at the request of his father, he prepared the warranty deed now in dispute on his sister's computer. The deed purports to convey the land at issue

2

from father to son for $1.00 consideration. The signature "Wilson Waters" was notarized on the warranty deed on November 3, 2018, two days after Jeannette's death. The deed was not filed with the clerk of the Burke County Superior Court, however, until January 10, 2019.

During the intervening two months between the signature and the filing of the deed, several related events occurred. On November 5, 2018, Wilson and Daniel met with Wilson's longtime attorney, Walter Degenhardt, regarding the probate of Jeannette's will. Degenhardt signed an affidavit averring that during the meeting, Daniel and his wife asked Daniel's father to convey the property at issue to Daniel, and asked that a deed be prepared, but "[a]t no time during the meeting did Wilson Waters agree to convey any property to Daniel Waters." As to that same meeting, Daniel specifically deposed that Degenhardt's affidavit was incorrect on these points.

On November 28, 2018, the father executed a new will, leaving all his property to two of his four children, and none to Daniel.

Degenhardt completed the probate of Jeannette's will on December 3, 2018.

On December 6, 2018, Wilson, as the executor of his late wife's will, executed an Assent to Testamentary Devise. Through the Testamentary Devise, he transferred Jeannette's fee simple interest in the property at issue from the estate to himself, and

3

quoted the stated terms of the will therein. The parties do not provide record citations to the will itself and it does not appear in the appellate record.

On December 20, 2018, Daniel swore out an Affidavit for Summons of Dispossessory seeking to evict his sister and brother from the property at issue, as they were "unwanted guests." On December 26, 2018, a Burke County Incident Report shows that the sister called police asserting that Daniel and his wife had criminally trespassed on her father's property. "Daniel Waters asserted that he owned title to the listed residence[,]" but presented only a 2013 will listing him as sole heir to the property upon his father's death. Wilson Waters, of course, was then and remains alive. The police advised Daniel that "he had no ownership to the property and no authority to be on the property" without permission from his sister, brother, or father.

On January 10, 2019, Daniel Waters filed the warranty deed with the November 3, 2018 "Wilson Waters" signature under dispute with the Burke County Superior Court. Wilson Waters then initiated this action and on August 8, 2019, moved for partial summary judgment asserting that the warranty deed was a forgery and seeking to define ownership of the property. Following a hearing for which no transcript appears in the record, the trial court granted Wilson Waters' motion for

partial summary judgment, finding that there were no genuine issues of material fact regarding the validity of the warranty deed and setting it aside as "null and void." Daniel Waters then filed the instant appeal.

In related enumerations of error, Daniel Waters argues that the trial court erred in granting partial summary judgment because the depositions of certain witnesses contradicted the deposition of his father and the affidavits of other witnesses regarding whether his father signed the warranty deed, and that his father's summary judgment motion failed to establish sufficient facts demanding a grant of partial summary judgment. Because material questions of fact exist, we reverse.

Daniel Waters presented a deposition from Lex Williams, a Dublin, Georgia-based security guard and the notary public who notarized the warranty deed at issue. Williams deposed that he drove about 1.5 hours from Dublin to Waynesboro, Georgia, where he met at a residence with Daniel Waters and "an older gentleman" whom he deposed was the father. Williams deposed that he spent 30-45 minutes with the Waterses, talking with the older man to confirm that he really wanted to transfer the property to his son. He deposed that the father said, "yes, this is what I want to

do." Williams deposed that he did not look at the father's driver's license, "took him at his word" regarding his identity, and observed no signs of coercion.

Kimberly Payne, who drove from Dublin with Williams in order to serve as a witness, deposed that she saw the elder Waters sign the warranty deed and that he appeared to be cognizant and not under coercion or distress. She did not recall whether Williams checked Wilson Waters' driver's license or confirmed his identity.

Wilson Waters, who was 82 at the time of his deposition, deposed that he grew up in an orphan home but could not remember its name, worked for companies but could not recall their names, and served in the military but did not remember which years. He deposed that he was "supposed to have four" children, but could not recall all of their names. He confirmed that he was presently living with his daughter, but could not recall how long they had lived together.[1]

Wilson Waters deposed that he did not recall signing a deed that put his land in his son's name or whether the land had ever been in his son's name. He did not

_____

[1] The portion of the trial court record that appears in the appellate record before us does not indicate that any issue has been raised regarding Wilson Waters' competency. See generally *Williams v. Williams*, 223 Ga. 374, 375 (155 SE2d 383) (1967).

want the land to be in his son's name because "I live there." The following discussion then took place between Wilson Waters and his counsel:

> Q: You remember whether you signed any papers about your land?

> A: I remember one time that he asked me to sign a paper and I did, but I didn't know what it was about.

> Q: Okay, Mr. Waters. Can you see that paper there?

> A: I don't remember.

> Q: Does that look like your signature?

> A: I couldn't really say. I just really couldn't say.

When asked by Daniel Waters' counsel whether his son had forged his signature on "a piece of paper," the father deposed that he "did not know," but when asked if he would tell a judge that his son "forged [his] name on a piece of paper[,]" the father responded, "No." The "piece of paper" was never specifically identified.

Daniel Waters deposed that the signature on the deed was his father's and that Williams, the notary, did check his father's driver's license.

Arthur T. Anthony, a certified forensic handwriting and document examiner retained by Wilson Waters, signed an affidavit stating that after comparing various documents containing Wilson Water's signature with the warranty deed at issue, his professional opinion was that "Wilson Waters did not sign his name on the [w]arranty [d]eed . . . [and] the signature contained on the [w]arranty [d]eed is a simulated forgery."

"To be valid, a deed must be in writing, *signed by the maker*, attested by at least two witnesses, supported by consideration, and delivered to the purchaser or his [or her] representative." (Emphasis supplied.) *Z & Y Corp. v. Indore C. Stores, Inc.*, 282 Ga. App. 163, 173 (2) (b) (638 SE2d 760) (2006); see also OCGA § 44-5-30. Further, under OCGA § 44-2-14 (a), a deed may be recorded only if it has been properly attested or acknowledged. See generally *Lionheart Legend v. Norwest Bank Minnesota Nat. Assn.*, 253 Ga. App. 663, 667 (560 SE2d 120) (2002) (A deed that is improperly executed may be binding as between the parties absent evidence of fraud or coercive action.). However, "[a] forged deed is a nullity and vests no title in a grantee." (Citation and punctuation omitted.) *Aurora Loan Svcs. v. Veatch*, 288 Ga. 808, 809 (710 SE2d 744) (2011).

When viewed in the light most favorable to Daniel Waters as the non-moving party, it is clear that fact questions exist regarding the identity of the person who signed the warranty deed and the validity of the signature on the warranty deed. Williams and Payne deposed that they watched Wilson Waters sign the deed. Wilson Waters deposed that he did not want the land in his son's name, could not say that the signature on the deed was his, did not remember signing any deed putting the land in his son's name, and, importantly, had not given away any land since his wife died. The forensic expert opined that the signature did not belong to the father, and the father's attorney, Degenhardt, deposed that just days after the father's purported signature on the warranty deed, the father stated that he did not want a deed prepared. Daniel Waters deposed that his father asked him to prepare the deed. There was conflicting testimony, as outlined above, about whether the notary adequately identified the signer of the deed.

As this Court has found, "[s]ummary judgment should be granted only where *undisputable facts* exist on which reasonable minds could not differ." (Citation and punctuation omitted; emphasis supplied.) *Hurst v. Evans*, 284 Ga. App. 274, 274-276, 277 (1) (643 SE2d 824) (2007) (reversing grant of summary judgment in quiet title action where, inter alia, the appellees' "inability to recall particular relevant facts"

9

and inconsistent testimony related to whether a wife signed a warranty deed and sales contract without her husband's authorization). Here, the facts are by no means "undisputable." Because material questions of fact remain, we reverse the trial court's grant of summary judgment.

*Judgment reversed. Miller, P. J., and Pipkin, J., concur.*