# FIFTH DIVISION
# RICKMAN, C. J.,
# MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**September 20, 2021**

# In the Court of Appeals of Georgia

A21A0998. SCHOCK v. HOLY TRINITY CATHOLIC CHURCH et al.

PHIPPS, Senior Appellate Judge.

Mark Schock sued Holy Trinity Catholic Church (the "Church") and Holy Trinity Council #8081, a/k/a Knights of Columbus Council #8081 (the "Knights of Columbus"),[1] for injuries he allegedly sustained when he slipped and fell at a Lenten dinner hosted by the Knights of Columbus and held on the Church's property. The Church and the Knights of Columbus moved for summary judgment, asserting that Schock's suit was barred by Georgia's Recreational Property Act ("RPA"), OCGA § 51-3-20 et seq., and that Schock failed to establish the essential elements of his claim. The trial court granted the motions for summary judgment after finding that the

---

[1] Schock's lawsuit named an additional defendant, but that defendant has been dismissed from the case.

RPA shielded both defendants from liability for Schock's injuries, and Schock appeals. For the reasons set forth below, we affirm.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal from a ruling on a motion for summary judgment, this Court applies a de novo standard of review, and we view the evidence, including any reasonable conclusions and inferences that it supports, in the light most favorable to the nonmovant. See *Word of Faith Ministries v. Hurt*, 323 Ga. App. 296, 296-297 (746 SE2d 777) (2013).

So viewed, the record shows that the Church is located in Peachtree City and is open both to its members and to the general public.[2] The Knights of Columbus is a service organization, separate and distinct from the Church, that collects and donates funds to various programs and charities in its community. The Church

---

[2] As an initial matter, we note that Schock's appellate brief does not contain a single citation to the record as required by Court of Appeals Rule 25 (c) (3). It is not this Court's responsibility to search the record on behalf of a party, *Willis v. Allstate Ins. Co.*, 334 Ga. App. 540, 542 (779 SE2d 744) (2015), and the failure to comply with our Court rule subjects Schock's unsupported errors to potential abandonment. Court of Appeals Rule 25 (c) (2). However, because we can ascertain Schock's general argument and the record is not burdensome, we have exercised our discretion to resolve this appeal on the merits. *Willis*, 334 Ga. App. at 542.

provides the Knights of Columbus with custody and control of a hall located on the Church's property for the Knights of Columbus to host a Lenten dinner. The Church does not pay for or provide the food served at the Lenten dinners or employees to work at the dinners, nor does the Church receive any donations from the Knights of Columbus for providing a venue for the dinners.

According to one of its trustees, the Knights of Columbus hosts the Lenten dinners as a charitable service to the community, and the dinners' purpose is "for all individuals in the community to spend time together enjoying a meal." The dinners are open to the public, and both admission and the food are free of charge to all. While the Knights of Columbus accepts donations, it does not require that attendees make a donation or pay an entrance fee to attend the Lenten dinners. Moreover, no items are sold at the Lenten dinners by either the Knights of Columbus or the Church.

Schock went with his mother to attend a Lenten dinner on March 28, 2014 (the "Dinner"). Schock testified that he entered the hall to get food while his mother remained in the car talking on her phone. According to Schock, after filling his plate at one table, he slipped and fell on a substance on the floor while walking to another table. Schock admitted that he did not see anything on the floor before he fell. Although Schock's mother testified that she was going to give a donation to attend

3

the Dinner, she admitted that she had not done so prior to Schock's fall because she was still outside when he slipped and fell. This appeal follows the grant of summary judgment to the Church and the Knights of Columbus based on the applicability of the RPA.

1. Schock first asserts that the trial court erred by finding that the RPA barred his claims against both the Church and the Knights of Columbus. Specifically, Schock argues that the Dinner did not qualify for protection under the RPA because it "was not a recreational activity open to the public, and free of charge to the public." We disagree.

"The purpose of [the RPA] is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes." OCGA § 51-3-20. OCGA § 51-3-22 provides that, subject to certain exceptions not relevant here, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for

4

recreational purposes."[3] The RPA shields from liability "an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes." OCGA § 51-3-23. Schock does not dispute on appeal that the Church and the Knights of Columbus constitute "owners" for purposes of the RPA. See OCGA § 51-3-21 (3); see also generally *Chatham Area Transit Auth. v. Brantley*, 353 Ga. App. 197, 206-208 (3) (a) (834 SE2d 593) (2019). Rather, he argues that the Dinner was not free of charge and open to the public, and it did not serve a recreational purpose.

(a) *Free of charge*. "As a prerequisite to immunity under the Recreational Property Act, the owner cannot charge a fee for admission to the property." *Maleare v. Peachtree City Church of Christ*, 213 Ga. App. 593, 595 (1) (a) (445 SE2d 321) (1994) (citations and punctuation omitted) (physical precedent only). See also *Mercer Univ. v. Stofer*, 306 Ga. 191, 199 (3) (830 SE2d 169) (2019) ("[N]o admission fee may be charged if immunity is to be enjoyed."). It is undisputed that neither the Church nor the Knights of Columbus charged a fee for admission to the Church

---

[3] OCGA § 51-3-25 sets forth exceptions to the statute, but the parties do not contend that any exception applies to the facts of this case. We note that although the language of this statute was amended effective July 1, 2018, none of the changes are relevant to this case, to which the prior version of the statute applies because Schock's fall occurred in 2014.

property or, specifically, the Church hall where the Dinner was served. It is further undisputed that Schock did not pay an admission fee to enter the Church property or the Dinner venue. Thus, the Church and the Knights of Columbus invited or permitted Schock to enter the property free of charge, as contemplated by OCGA § 51-3-23.

In an attempt to circumvent this fact, Schock asserts that the trial court erred in applying the RPA to bar his claims against both the Church and the Knights of Columbus because the Dinner itself was not free of charge. According to Schock, the Church and the Knights of Columbus both received "a financial benefit" from the Dinner by collecting money from attendees. Specifically, Schock claims, without any citation to the appellate record or authority, that a basket placed at the front of the food line was "a clear sign to attendees that the collection of monies was expected in order to partake in the food." Schock's assertions, however, are contradicted by the undisputed evidence in the record.

The undisputed evidence shows that the Dinner was hosted by the Knights of Columbus through its charity work, and individuals were *not* charged for the Dinner. While a basket accepting donations sat near the food, it is undisputed that individuals who did not contribute nevertheless were permitted to attend the Dinner and partake

6

in the food. These undisputed facts supported the trial court's conclusion that admission to the Dinner was free of charge despite the placement of a basket collecting donations at the food line and "forecloses issues of fact (genuine or otherwise) regarding lack of immunity under the Recreational Property Act" due to charges for admission. *Maleare*, 213 Ga. App. at 595 (1) (a).

Moreover, the record is undisputed that even if other attendees somehow felt compelled to make donations due to the placement of a donation basket at the front of the food line and even if such donations could be construed as an admission fee, Schock did not contribute any money for the Dinner. Schock relies on *Mayor & Aldermen of Garden City v. Harris*, 339 Ga. App. 452 (793 SE2d 628) (2016), to support his argument that admission to the Dinner was not free of charge; however, that decision was reversed by the Supreme Court of Georgia, which specifically concluded that "[a] landowner's liability is limited to those injured persons who have paid to use the landowner's property for recreational purposes[.]" *Mayor & Aldermen of Garden City v. Harris*, 302 Ga. 853, 856 (809 SE2d 806) (2018). That holding makes clear that the RPA's protections are available to the Church and the Knights

of Columbus because Schock did not pay for his admission to the Dinner. See id.[4]

Accordingly, the trial court did not err in concluding that admission to the Dinner was free of charge for Schock.

(b) *Open to the public*. Schock further maintains that the RPA does not operate to bar his claim against the Church and the Knights of Columbus because the Dinner was not open to the public without limitation. Specifically, Schock asserts, without any citations to the record or authority, that the Dinner's "religious origins . . . intrinsically [serve] to limit those who attend to members of the [Church] or Knights of Columbus, other Catholics, and those not of the Church who are invited by members." We disagree.

Contrary to Schock's assertions, there is no evidence in the record to support his claims that the Dinner was not open to the public, that admission to the Dinner was limited by any criteria, or that attendees were screened prior to being permitted free entry and receiving a free meal. In addition, Schock offers no evidence to support

[4] Although the General Assembly revised OCGA § 51-3-25 (2) as a result of the Supreme Court of Georgia's decision in *Harris*, the former version of the statute applies because Schock's fall occurred in 2014, and the statutory amendment did not become effective until July 1, 2018. See *Stofer*, 306 Ga. at 194 (2), n. 4. The statutory changes, therefore, as indicated previously, are not relevant to this case, and the ruling in *Harris* applies in this case. See id.

8

his argument that the religious significance of the event dissuaded non-Catholics. In fact, it is undisputed that the Knights of Columbus hosted the Dinner as a charitable service, and, indeed, the purpose of the dinner was for "all individuals in the community to spend time together enjoying a meal."

The Dinner at issue in this case parallels the fall festival in *Word of Faith Ministries*, in which this Court concluded that the RPA immunized from liability a church sponsoring a free "Hallelujah Fun Night," intended as an alternative to traditional Halloween activities, on its grounds. 323 Ga. App. at 297-299 (1). The same rationale applies in the case at hand, and Schock's attempt to distinguish *Word of Faith Ministries* is unpersuasive. Schock alleges that the dietary and other restrictions imposed by Lent and implemented by the Knights of Columbus at the Dinner create a narrower benefit than the fall festival at issue in *Word of Faith Ministries*. However, both the Dinner and the fall festival were free events hosted on church property, and Schock failed to present any evidence demonstrating that the Church or the Knights of Columbus limited access to Church property or attendance at the Dinner to certain members of the community. The trial court, therefore, did not err in concluding that the Dinner was open to the public.

(c) *Recreational purpose*. Schock argues in his appellate brief that the Dinner did not have a recreational purpose, as required for the RPA's protection to apply. Specifically, he asserts, without any citation to the appellate record, that the "Lenten dinner's purpose was clearly to raise money to benefit the Knights of Columbus." We again disagree.

The RPA defines the term "recreational purpose" by listing a noninclusive group of activities, including "picnicking" and "viewing or enjoying historical, archeological, scenic, or scientific sites." OCGA § 51-3-21 (4). Georgia appellate courts have interpreted the RPA broadly, finding that it "encompasses *any* recreational activity, i.e., any amusement, play or other form of relaxation which refreshes the mind or body." *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 115 (1) (a) (537 SE2d 345) (2000) (emphasis supplied); accord *City of Chickamauga v. Hentz*, 300 Ga. App. 249, 251 (684 SE2d 372) (2009). In fact, as mentioned previously, this Court has concluded that a free festival event on church property, open to the community, serves a "recreational" purpose to which the RPA applies. *Word of Faith Ministries*, 323 Ga. App. at 298 (1).

To support his argument that summary judgment was not warranted because a question of fact existed regarding the Church's and the Knights of Columbus's

purpose in hosting the Dinner, Schock mistakenly claims this case is controlled by *Atlanta Committee for the Olympic Games v. Hawthorne*, 278 Ga. 116, 117-118 (1) (598 SE2d 471) (2004). However, the Supreme Court of Georgia expressly disapproved the language from *Hawthorne* upon which Schock relies in *Stofer*, 306 Ga. 191 at 201-202 (4), and Schock's reliance on *Hawthorne* therefore is misplaced. In *Stofer*, the Supreme Court clarified the relevant analysis under the RPA, explaining that in order to establish whether a landowner maintained the requisite recreational purpose and is therefore entitled to immunity under the RPA,

> the true scope and nature of the landowner's invitation to use its property must be determined, and this determination properly is informed by two related considerations: (1) the nature of the *activity* that constitutes the use of the property in which people have been invited to engage, and (2) the nature of the *property* that people have been invited to use. In other words, the first asks whether the activity in which the public was invited to engage was of a kind that qualifies as recreational under the Act, and the second asks whether at the relevant time the property was of a sort that is used primarily for recreational purposes or primarily for commercial activity.

Id. at 196 (2).

Contrary to Schock's argument, the fact that the Church and the Knights of Columbus may have solicited donations and obtained an indirect financial benefit is immaterial. Indeed, "[i]t is improper to consider a landowner's subjective motivations

11

in determining whether the landowner is entitled to immunity under the Act." *Stofer*, 306 Ga. at 199 (3). The relevant question instead is whether "the landowner actually invited people onto the property (directly or indirectly) to do something 'recreational,' or whether people have instead been allowed onto the property to engage in commercial activity." Id. at 196 (2) (emphasis omitted); see also *Mercer Univ. v. Stofer*, 354 Ga. App. 458, 460-461 (841 SE2d 224) (2020) (the question is whether, at the time of the recreational activity, the property was used primarily for recreational purposes or primarily for commercial activity).

Viewed in this light, the record shows that both the nature of the activity and the nature of the property at the time of the Dinner were purely recreational, not commercial. The undisputed evidence in the record shows that the purpose of the Dinner was to allow individuals in the community to gather together to enjoy a meal. The Dinner was an opportunity for the community to come together, socialize, share a meal, and "refresh[] the mind or body." See *Anderson*, 273 Ga. at 115 (1) (a); see also *Matheson v. Ga. Dept. of Transp.*, 280 Ga. App. 192, 196 (4) (633 SE2d 569) (2006). Therefore, Schock was invited to use the property for a recreational purpose. See *Matheson*, 280 Ga. App. at 194-195 (1) (b); *Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265, 267-269 (1) (606 SE2d 323) (2004). Moreover,

12

even if the [Dinner] had the effect of encouraging some people to consider joining the [C]hurch, thereby allowing the [C]hurch to eventually or potentially profit by increased tithes or gifts to the [C]hurch from those new members, the connection between the [Dinner] and the [C]hurch's eventual and hypothetical profit is far too tenuous to render the venture commercial.

*Word of Faith Ministries*, 323 Ga. App. at 298 (1) (citation and punctuation omitted).

The trial court did not err in finding that the RPA barred Schock's claims against both the Church and the Knights of Columbus.

2. Schock asserts that the trial court committed reversible error by not deciding whether the Church and the Knights of Columbus established that he had notice of the hazard that caused him to slip and fall. The trial court, however, was not obligated to do so because it specifically found that Schock's claims were barred by the RPA. "[W]hen a trial court determines that a certain issue is dispositive of the case, there is no reason to address any further issues." *City of Gainesville v. Dodd*, 275 Ga. 834, 837 (573 SE2d 369) (2002). Accordingly, the trial court did not err in refusing to address the merits of Schock's slip-and-fall claim.

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*

13