306 Ga. 191
FINAL COPY

S18G1022.  MERCER UNIVERSITY v. STOFER et al.

PETERSON, Justice.

The Recreational Property Act shields from liability a property owner "who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes[.]" OCGA § 51-3-23. The question in this case is what that phrase means. After careful consideration of the statutory text and a thorough review of our case law, we conclude that whether immunity is available under this provision requires a determination of the true scope and nature of the landowner's invitation[1] to use its property, and this determination properly is informed by two related

---

[1] Throughout this opinion, we use the term "invitation" to connote both invitation and permission. These terms have distinct legal meanings in some contexts, and the difference in meanings carries significant consequences in tort law. See, e.g., Charles R. Adams III, Ga. Law of Torts §§ 4:1, 4:4, and 4:5 (database updated December 2018). But the distinctions between the terms are not relevant to the question we decide today — the proper test for immunity under the Act — and this opinion would be more difficult to read if we wrote "invitation or permission" each time. The bench and bar should remain attentive to such distinctions when they matter.

considerations: (1) the nature of the *activity* that constitutes the use of the property in which people have been invited to engage, and (2) the nature of the *property* that people have been invited to use.

Here, the plaintiffs did not dispute that the activity in question — attending a free, outdoor concert in a public park that was hosted by the defendant, Mercer University — was generally "recreational" within the meaning of the Act. But the trial court concluded, and the Court of Appeals agreed, that the defendant was not entitled to summary judgment on its claim of immunity under the Act, given evidence that Mercer hosted the concert because it might (at least indirectly) benefit financially from the event. In arriving at this conclusion, the Court of Appeals appears to have been led astray by language in our most recent relevant decision that was inconsistent with our previous case law. First, the Court of Appeals relied on evidence about Mercer's subjective motivations in hosting the concert that may have had nothing to do with the nature of the activity for which people were invited to use the property or the nature of the property in question. Second, at least some of the

evidence cited by the Court of Appeals appears to be that of a merely speculative, indirect benefit that Mercer might receive as a result of the concert in question. Clarifying today that such considerations are generally improper, we vacate the Court of Appeals's decision and remand the case with direction that the court revisit its analysis consistent with the standard that we clarify here.

1.  *Background.*

Mercer seeks immunity from liability for claims by the estate and family of Sally Stofer, who was fatally injured when she fell at a free concert hosted by the university at Washington Park in Macon in July 2014. The park is owned by Macon-Bibb County, but Mercer had a permit to use the park for its concert series. The concert series was planned, promoted, and hosted by Mercer's College Hill Alliance, a division of Mercer whose stated mission is to foster neighborhood revitalization for Macon's College Hill Corridor. The Alliance's program director testified that the concerts also benefitted Mercer by making the university more attractive to potential students and by providing branding opportunities. And in a grant

3

proposal form that Mercer completed in seeking funding for the Alliance, Mercer reported that the university had "the capacity for direct and effective interaction with other local community economic development resources" which, "[p]roperly engaged, . . . could attract and create significant technological investment and collaboration, as well as the potential for additional revenue streams" to the university. Vendors at the park were selling food and drink when Ms. Stofer attended the concert, but she did not buy anything.

Ms. Stofer's children and her estate filed this wrongful death action against Mercer, asserting negligence claims. Mercer moved for summary judgment, arguing in part that it is immune from liability under the Act because it had invited Ms. Stofer and other members of the public to Washington Park for recreational purposes. The plaintiffs did not dispute that Ms. Stofer was engaging in a "recreational" activity while attending the concert on the property. But the plaintiffs opposed Mercer's claim of immunity on the basis that there was at least a jury question as to the nature of Mercer's "purpose" in hosting the concert, arguing that the

4

purpose for which the owner invites the public onto its land "has to be purely recreational, purely noncommercial."[2]

The trial court granted Mercer's motion as to some claims but denied its motion as to its claim of immunity under the Act. The Court of Appeals affirmed. See *Mercer Univ. v. Stofer*, 345 Ga. App. 116 (812 SE2d 146) (2018). The Court of Appeals concluded that Mercer was not entitled to summary judgment based on immunity under the Act, because "fact questions remain as to Mercer's purpose

---

[2] A hearing before the trial court on Mercer's motion for summary judgment included the following exchange:

COURT: [Y]our argument is not that having a concert the way this was was not recreational? I mean, you're not disputing that. That fits within the recreational definition that, not directly under the statute, but under case law.

PLAINTIFFS' COUNSEL: That's correct, Judge.

COURT: But you're arguing that there's evidence that it's also commercial and that creates the balancing test as a question of fact.

PLAINTIFFS' COUNSEL: That's right. . . . And what the case law says is not only does it have to be a recreational activity, like watching a concert or picnicking, but the purpose for which the owner does it has to be purely recreational, purely noncommercial. So it's kind of like the Bible. You've got to look at the heart, too. It's not just the activity but it's the owner's purpose.

in inviting the public to attend the free concert." Id. at 122 (1). In particular, the Court of Appeals cited evidence that Mercer stood to gain from the concert in the form of "branding opportunities" and making the university more attractive to potential students, noting Mercer's statement in its grant application that funding for events such as the concert series would create "the potential for additional revenue streams." Id. at 121-122 (1) (punctuation and emphasis omitted). And the court cited "the concert series' earlier funding through sponsorships" and "the current use of sponsors' banners and advertisements." Id. at 122 (1). In a concurrence dubitante, Chief Judge Dillard joined the panel's decision as compelled by a faithful application of this Court's precedent, but argued that subjecting Mercer to liability did not comport with the plain meaning or codified purpose of the Act. Id. at 127-130 (Dillard, C. J., concurring dubitante).

We granted Mercer's petition for certiorari and directed the parties to identify the correct test for determining whether a property owner who permits others to use its property for

6

recreational purposes is entitled to immunity under the Act, as well as to address whether that matter is a question of law for the court or a question of fact for the jury. Clarifying the standard for determining whether immunity is available under the Act, and reaffirming that this question sometimes, but not always, presents a dispute of material fact requiring resolution by a jury, we vacate the Court of Appeals's decision so that the court may perform its analysis anew in the light of what we say here.

2. *Our prior case law regarding the meaning of the language in question can be distilled to two areas of focus in determining the scope and nature of a landowner's invitation to use property: the nature of the* activity *that constitutes the use of the property that people have been invited to engage in, and the nature of the* property *that people have been invited to use.*

In our case law in this area, we have struggled to apply an Act regarding the recreational use of property to cases in which the use of property includes some aspects of recreational use mixed with some commercial use. Unlike some other states with similar laws,[3]

---

[3] See, e.g., Okla. Stat. tit. 76, § 10.1 (D) (2) (immunity does not apply if "[a]ny commercial or other activity for profit directly related to the use is conducted on any part of the land").

7

Georgia's Act provides little textual guidance to such an undertaking. And the Act provides no indication that the answer is at either extreme — i.e., that any recreational use confers immunity, notwithstanding the amount of accompanying commercial use, or that any associated commercial use, however minimal, deprives the landowner of immunity even when the invitation is predominantly for recreational activities.

With certain exceptions, the Act gives immunity to those who, without charge, allow the public to use their property for recreational purposes. The Act provides:

Except as specifically recognized by or provided in Code Section 51-3-25,[4] an owner of land[5] owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for recreational purposes.

OCGA § 51-3-22. The Act also provides:

Except as specifically recognized by or provided in Code Section 51-3-25, an owner of land who either directly or indirectly invites or permits without charge any person

---

[4] OCGA § 51-3-25 provides:

Nothing in [the Act] limits in any way any liability which otherwise exists:

(1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity; or

(2) On a date when the owner of land charges any individual who lawfully enters such land for recreational use and any individual is injured in connection with the recreational use for which the charge was made, provided that, in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for the lease shall not be deemed a charge within the meaning of this Code section.

The plaintiffs do not argue that either exception contained in OCGA § 51-3-25 applies here. We note that subsection (2) of this provision reflects substantive changes by the General Assembly following our decision last year in *The Mayor and Aldermen of the City of Garden City v. Harris*, 302 Ga. 853, 855 (809 SE2d 806) (2018). See Ga. L. 2018, p. 1083, § 1. None of these changes are relevant to this case, to which the prior version of the statute applies.

[5] The plaintiffs do not dispute that Mercer qualifies as an "owner" for purposes of the statute, defined in OCGA § 51-3-21 (3) as "the possessor of a fee interest, a tenant, a lessee, an occupant, or a person in control of the premises."

to use the property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or (3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

OCGA § 51-3-23. The plaintiffs opposed Mercer's motion for summary judgment on the ground that "a jury question exists as to whether the concert was for a recreational purpose[,]" pointing to evidence that Mercer had at least an indirect financial interest in hosting the concert.

The issue here, then, is the meaning of the phrase "invites or permits without charge any person to use the property for recreational purposes[.]" Although the word "purpose" often refers to a person's subjective motivation for doing something (and, indeed, some decisions interpreting the Act have used the statutory word that way), that is not the sense in which the Act uses the word in the phrase "recreational purpose." Instead, the Act defines "recreational purpose" only by way of a list of examples of activities in which people might engage, providing that the term

10

includes, but is not limited to, any of the following or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, aviation activities, nature study, water skiing, winter sports, and viewing or enjoying historical, archeological, scenic, or scientific sites.

OCGA § 51-3-21 (4). As a result, our case law has primarily focused on determining the nature of the "activity" in which people have been invited to engage. See *Atlanta Committee for the Olympic Games, Inc. v. Hawthorne*, 278 Ga. 116, 118 (2) (598 SE2d 471) (2004) (noting test is to "examine all relevant social and economic aspects of the activity"); *Anderson v. Atlanta Committee for the Olympic Games, Inc.*, 273 Ga. 113, 115-117 (2) (537 SE2d 345) (2000) (same); *City of Tybee Island v. Godinho*, 270 Ga. 567, 568-569 (511 SE2d 517) (1999) (activity was using sidewalk that "provid[ed] access to and viewing of a scenic site"); *Cedeno v. Lockwood, Inc.*, 250 Ga. 799, 801-802 (2) (301 SE2d 265) (1983) (no immunity because the key public activity was purchasing food, merchandise, and services).

Although these examples emphasize the actions of the people invited to use the property, as discussed further in Division 3,

11

application of the phrase "invites or permits" in OCGA § 51-3-23 necessarily involves some consideration from the perspective of the landowner in the sense that immunity under the Act turns on whether the landowner *actually* invited people onto the property (directly or indirectly) to do something "recreational," or whether people have instead been allowed onto the property to engage in commercial activity. Our more recent case law applying the statutory provision in question has included some language calling for consideration of the *subjective* motivations of the landowner in issuing the invitation in question, and whether the landowner would receive a merely indirect benefit from that invitation — considerations that are not supported by the text of the statute. But the key teachings of our cases can be distilled into a test that is more connected to the statutory text: the true scope and nature of the landowner's invitation to use its property must be determined, and this determination properly is informed by two related considerations: (1) the nature of the *activity* that constitutes the use of the property in which people have been invited to engage, and (2)

the nature of the *property* that people have been invited to use. In other words, the first asks whether the activity in which the public was invited to engage was of a kind that qualifies as recreational under the Act, and the second asks whether at the relevant time the property was of a sort that is used primarily for recreational purposes or primarily for commercial activity.

In *Bourn v. Herring*, 225 Ga. 67 (166 SE2d 89) (1969), our first decision under the Act, we focused — albeit with little analysis — on the nature of the property in determining the presence of a recreational purpose. Id. at 68 (1) (a) (reciting statutory definition of "recreational purpose" and then holding that "[t]he picnic and lake area made available in the instant case under the allegations of the petition come within this definition of recreational purpose").

In *Cedeno,* our first decision analyzing in any depth what constitutes a "recreational purpose" under the Act, we rejected a property owner's argument that it was entitled to immunity against the claim of a sightseer injured in a stairway fall in the shopping and entertainment area of Underground Atlanta. See 250 Ga. at

13

801-802 (2). We did so by focusing on both the activity of the plaintiffs and the nature of the property and finding the latter dispositive. Without explicitly rejecting the defendant's suggestion that the plaintiffs' sightseeing activities were themselves recreational, we indicated that the plaintiffs were not invited onto the premises primarily to enjoy the scenery, but were invited there to spend money:

> The property owners . . . and their tenants make their property available to the public for entertainment purposes and anticipate the visitors will purchase the food, merchandise, or services available. They are in the *business* of entertainment or recreation. They provide scenic areas and comfortable facilities to attract the public to their businesses, not to *give* the public a place for recreation.

Id. (emphasis in original). In other words, the activity in which the plaintiffs were engaged may have been recreational, but the nature of the property (essentially a shopping and entertainment mall with restaurants and clubs open for business)[6] suggested that the scope

---

[6] Although not pertinent to *Cedeno*, it is worth noting that the property that is relevant is not necessarily an entire tract of land; rather, it is the portion of the property to which people have been invited.

14

and nature of the landowners' invitation was instead commercial. And even if visitors to Underground Atlanta did engage in some recreation, the predominant use of the property remained commercial and thus defeated immunity:

> If the public is invited to further the business interests of the owner — e.g., for sales of food, merchandise, services, etc. — then the [Act] will not shield the owner from liability even though the public receives some recreation as a side benefit.

Id. at 802 (2).

In contrast, in our next decision under the Act, *Godinho*, we found that a city was entitled to immunity from a claim by a pedestrian who fell on a sidewalk owned by the city and adjacent to a beach. See 270 Ga. at 568-569. We distinguished *Cedeno* both on the nature of the invitation to the public to enter the property and on the nature of the property itself. Unlike the scenario in *Cedeno*, the public was not invited to use the sidewalk to shop; we noted the city was "not in the business of entertainment or recreation" — and the sidewalk was not even the most direct route to nearby businesses. Id. at 569 & n.13. And, regarding the nature of the

15

property, we said "a primary purpose of the sidewalk [was] to 'give the public a place of recreation' by providing the access to and viewing of a scenic site[.]" Id. at 568-569.

And then in personal injury suits against the Atlanta Committee for the Olympic Games ("ACOG") arising from the 1996 Centennial Olympic Park bombing, we maintained this dual focus, even though we did not articulate it so clearly. See *Anderson*, 273 Ga. at 115-117 (2); *Hawthorne*, 278 Ga. at 117-118 (1). In *Anderson*, we acknowledged that our prior cases "contain[ed] little guidance to the courts in determining the applicability of the [Act] in mixed-use cases." 273 Ga. at 116. We went on to announce "a balancing test to determine whether an activity is 'recreational.'"[7] Id. at 117. That test considers "all social and economic aspects of the activity." Id. (emphasis omitted). We provided little additional explanation of this

---

[7] We adopted this test from a decision of the Wisconsin Court of Appeals applying Wisconsin's version of the Act. *Silingo v. Village of Mukwonago*, 458 NW2d 379, 382-383 (Wis. Ct. App. 1990). The Wisconsin court developed this test to ensure that the analysis focused on objective considerations rather than the subjective assertions by parties as to their motives. Id.

16

test that appeared at first glance to focus only on the activity, but then went on in *Hawthorne* to explain that the balancing test required "the examination and weighing of evidence in those instances in which there exist *both commercial and recreational aspects to the property in issue.*" *Hawthorne*, 278 Ga. at 117 (1) (emphasis added). This made clear that the issue is not simply the activity in a vacuum, but also the nature of the property that is being used for that activity.

We did, however, use additional language in *Hawthorne* that confused matters. Without detailing the particulars of the event in question or the activities in which the public had been invited to participate, we said that the factfinder had to consider "any relevant evidence that may be adduced that ACOG's purpose in allowing the public free of charge on the locus delicti was to derive, *directly or indirectly*, a financial benefit for pecuniary gain from business interests thereon," adding that there was "evidence that ACOG derived financial benefits for pecuniary gain from businesses occupying the Park or that those businesses gained untold

17

advertising and promotional value due to their conspicuous presence in the Park[.]" 272 Ga. at 118 (1), 120 (2) (citation and punctuation omitted; emphasis added); see also id. at 117 (1) ("The owner's ipse dixit regarding the purpose for making the property available free of charge is an important factor."). Although this language could be read as suggesting a focus on ACOG's subjective motivations, we clarify today that our decision is properly understood as holding that a jury trial is required when there is a dispute of fact as to the nature and scope of the invitation for people to use the landowner's property, with a focus on (1) the nature of the activity in which the public was invited or permitted to engage, i.e., were members of the public invited to enter Centennial Olympic Park to shop, or were they invited to engage in some recreational activity, or, if both, which predominated; and (2) the nature of the property itself, i.e., was the park as it existed at the relevant time primarily recreational or primarily commercial.[8]

---

[8] Regarding the temporal lens for this inquiry, we also held that on remand the jury could consider evidence from "before, during, and after the

18

3. *It is improper to consider a landowner's subjective motivations in determining whether the landowner is entitled to immunity under the Act.*

The language in *Hawthorne* discussed above that could be read as suggesting a focus on a landowner's subjective motivations is inconsistent with the text of the statute. The word "purpose" is used throughout the Act. In some other contexts, "purpose" may be understood to refer to subjective motivation. But that is not how the Act uses the word. With only one exception not relevant here,[9] "purpose" appears in the Act only as part of the defined term "recreational purposes." See OCGA § 51-3-21 (4) (non-exclusive list of a variety of activities). When we read that defined term in the context of its use in OCGA § 51-3-23, that term does not refer to a landowner's reason for opening land; rather, the statute uses the

---

bombing *to the extent* that evidence may help the jury to determine why the public was allowed free of charge into the Park as it existed during the Olympics, and most pertinently, on the date the bomb exploded in the Park." Hawthorne, 278 Ga. at 120 (3) (citation and punctuation omitted; emphasis in original).

[9] See OCGA § 51-3-23 (1) (landowners inviting people to use their property for a recreational purpose do not thereby "[e]xtend any assurance that the premises are safe for any *purpose*" (emphasis added)).

19

term to refer to the activities in which invited people will engage. Similarly, OCGA § 51-3-22 refers to "*persons entering* for recreational purposes" (emphasis added). There can be no question about whether the property owner — who may be far away from the property itself, doing no swimming, hiking, skiing, or any of the other activities listed in OCGA § 51-3-21 (4) — is using the property for "recreational purposes"; it would be strange indeed to characterize the purpose of an absent owner as "recreational." Consideration of a landowner's financial interests is nowhere found in the language of the statute, except to the important extent that no admission fee may be charged if immunity is to be enjoyed.

Now, it may well be that objective evidence of a landowner's purpose in allowing others onto the property may be relevant to whether the public was truly *invited* onto the property to engage in recreation — or, as in *Cedeno*, to spend money at the businesses of Underground Atlanta. For example, if a landowner allows certain people to fish in his lake while excluding other people without an obvious basis for who is allowed and who is not, it could be relevant

20

to determining the nature of the invitation to show that the landowner was being paid 50 percent of the profits of the bait shop next to the lake, and the people allowed to fish had all bought their bait from the bait shop, while everyone not allowed to fish had not bought bait at the bait shop. But, as a general matter, the landowner's financial interest in the bait shop would probably not be relevant absent evidence of some effort to push people to shop there, or that the nature of the property strongly emphasized the bait shop relative to the lake. It is not the law — and we have never said that it was — that inviting people to use recreational property for recreational activities could still fail to qualify for immunity under the Act solely because the landowner had some sort of subjective profit motive in doing so. To the extent that our prior decisions (or decisions of the Court of Appeals following our decisions) contain language suggesting that property owners' subjective motivations may be relevant apart from determining the nature of the activity for which people were invited to use the property or the nature of the property in question, that language is

21

inconsistent with the statutory text and the test that we have actually applied, and that language is disapproved.

4. *We also disapprove language in one of our previous opinions to the extent that it requires consideration of the possibility that a landowner may obtain an indirect financial benefit by virtue of opening up its land in determining whether the Act affords immunity.*

The Court of Appeals's decision in this case was also infected with a more acute problem from our case law. In *Hawthorne*, we introduced for the first time a suggestion that courts should consider indirect, speculative benefits that may inure to a landowner. See 278 Ga. at 118 (1) (jury should consider evidence that ACOG hoped to derive a financial benefit "directly or indirectly"). That language was not necessary to the holding of that case, which was that a jury trial was necessary based on the Court of Appeals's general finding that there remained "'material issues of fact as to whether the Park was a commercial or a recreational venture'" to be resolved by a jury (in terms we use here, the nature of the property was seriously disputed). Id. (quoting *Anderson v. Atlanta Committee for the Olympic Games, Inc.*, 261 Ga. App. 895, 899 (1) (584 SE2d 16)

22

(2003)). And *Hawthorne*'s language regarding attenuated, indirect benefits bore even less connection to the text of the statute than would a focus on direct financial interests that, as we just explained here, are usually irrelevant.

*Hawthorne*'s language also was inconsistent with prior decisions of both this Court and the Court of Appeals indicating that speculation about an indirect benefit a landowner might receive was insufficient to deprive the landowner of immunity under the Act. We held 50 years ago in *Bourn* that a defendant corporation was entitled to immunity for inviting the public free of charge to its picnic and lake area, notwithstanding the plaintiff's allegation that the defendant's purpose was to promote the sale of its products with advertising. See 225 Ga. at 68 (1) (a). We cited this principle with approval in *Anderson*. See 273 Ga. at 116 (2) (citing *Bourn*). And, analyzing the meaning of "recreational purpose" in more depth, we held in *Godinho* that indirect benefits that a city might receive from allowing people to use its sidewalk adjacent to a public beach, such as taxes attributed to those who use the sidewalk to access, and

spend money in, nearby businesses, were insufficient to defeat immunity under the Act. 270 Ga. at 569; see also *Julian v. City of Rome*, 237 Ga. App. 822, 823 (1) (517 SE2d 79) (1999) (any indirect financial benefit the defendant city may derive from its walkway providing access to the city's businesses did not remove walkway from protection of the Act).[10] This language of *Hawthorne* was thus inconsistent with the weight of our case law, and finds no support in

---

[10] We note that *Hawthorne*'s "directly or indirectly" language has been repeated in only two Court of Appeals cases. See *Martin v. Dempsey Funeral Svcs. of Ga., Inc.*, 319 Ga. App. 343, 346 (1) (735 SE2d 59) (2012); *Butler v. Carlisle*, 299 Ga. App. 815, 825 (5) (683 SE2d 882) (2009). Although in *Butler* the Court of Appeals concluded that a jury needed to consider whether the landowner directly or indirectly obtained financial benefits from allowing his land to be used for a festival, see id. at 824-825 (5), it is not so clear that the possibility of "indirect" financial benefit was the basis for the Court of Appeals ruling for the plaintiff in *Martin*. In that cemetery slip-and-fall case, the defendant had provided interment services for the plaintiff's daughter, and the court observed that family visits to the gravesites "were at least implied under the commercial purchases of the interment rights[.]" 319 Ga. App. at 347 (1). And even after *Hawthorne*, the Court of Appeals has rejected as too tenuous plaintiffs' claims based on indirect financial benefits that may inure to a landowner. See *Word of Faith Ministries, Inc. v. Hurt*, 323 Ga. App. 296, 298-299 (1) (746 SE2d 777) (2013) (connection between free church festival and hypothetical increased tithes or gifts to the church from new members too tenuous to render the festival "commercial"); *Matheson v. Ga. Dept. of Transp.*, 280 Ga. App. 192, 195 (1) n.2 (633 SE2d 569) (2006) (connection between local merchant brochures displayed at state rest stop and hypothetical increased tax revenues to the state if local merchants do more business was too tenuous to render the venture commercial).

the text of the statute to warrant keeping it notwithstanding this inconsistency, so we disapprove language in *Hawthorne* or any other cases that could be read to require consideration of evidence that a landowner was motivated by the possibility that it would obtain *indirect* financial benefits from allowing the public to use its land in determining whether that invitation was for "recreational purposes" under the Act. See *Hawthorne*, 278 Ga. at 118 (1).

5.     *Whether a defendant is entitled to immunity under the Act will sometimes present a question of fact for a jury, especially in mixed-use cases.*

Turning to the second question we posed in granting certiorari, our decision here does not mean that the issue of immunity under the Act will always — or will never — present a question for a jury. "[T]he definition and limitation of a defense is a question of law for the court; the existence or non-existence of facts on which the defense is predicated is a question for the jury." *Hawthorne*, 278 Ga. at 117 (1) (citing *Goble v. Louisville & Nashville R.R. Co.*, 187 Ga. 243, 251 (4) (200 SE 259) (1938)). Thus, we have said that "whether the [Act] applies to limit the liability of the owner of a certain

25

property at a certain time is a question of law for the trial court[,]" but where there is a conflict in the evidence regarding whether people were invited to use property for recreational purposes, "it is for the fact finder to resolve the conflict[.]" Id. The activity that people have been invited to engage in, and the nature of the property that people have been invited to use, are questions that our case law shows are often genuinely disputed. In the case of a genuine dispute of material fact, a jury must resolve the dispute.

Mercer complains that the protections of the Act "are significantly degraded if nearly every defendant is forced to undergo a trial before its immunity can be determined." But this Court's case law — which we largely reaffirm today while seeking to clarify its application — does not always require a trial in order for a defendant to avail itself of immunity under the Act. See, e.g., *Word of Faith Ministries, Inc. v. Hurt*, 323 Ga. App. 296, 297-299 (1) (746 SE2d 777) (2013) (concluding defendant entitled to summary judgment based on immunity under the Act); *Matheson v. Ga. Dept. of Transp.*, 280 Ga. App. 192, 195-196 (1) (b) -- (4) (633 SE2d 569)

26

(2006) (same); *Carroll v. City of Carrollton*, 280 Ga. App. 172, 175-176 (633 SE2d 591) (2006) (same); *Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265, 265-271 (1), (2) (606 SE2d 79) (1999) (same); *Julian*, 237 Ga. App. at 823 (1) (same); *S. Gwinnett Athletic Assn., Inc. v. Nash*, 220 Ga. App. 116, 117-119 (1) (469 SE2d 276) (1996) (same).

Indeed, as discussed in more detail below, we express no opinion here regarding whether a trial is necessary to determine whether Mercer is entitled to immunity in this case. And to the extent a jury trial may often be required to resolve the question of immunity under the Act, that is not out of step with our construction of similar statutes. See *Doctors Hosp. of Augusta, LLC v. Alicea*, 299 Ga. 315, 330-331 (3) (788 SE2d 392) (2016) (affirming denial of summary judgment sought under statutory provision that no health care provider "shall be subject to civil or criminal liability" in certain circumstances related to directive of health care agent, given factual dispute as to whether provider relied on any such directive); *Abdel-Samed v. Dailey*, 294 Ga. 758, 765-767 (3) (755 SE2d 805) (2014)

27

(affirming denial of summary judgment sought under statute providing that no health care provider "shall be held liable" for emergency medical care unless clear and convincing showing of gross negligence, given jury question on the question of gross negligence).[11]

6.     *We remand to the Court of Appeals to determine whether Mercer is entitled to summary judgment on the basis of immunity under the Act.*

Our decision today clarifying the governing standard requires the Court of Appeals to reconsider whether Mercer is entitled to summary judgment on its claim of immunity under the Act. The Court of Appeals affirmed the denial of summary judgment to Mercer based on a dispute of fact as to the owner's purpose in hosting the concert. *Mercer Univ.*, 345 Ga. App. at 122 (1). In particular, the Court of Appeals cited Mercer's statement about "the potential for additional revenue streams" to be derived from

---

[11] Additionally, we note that the Act speaks only to the availability of immunity, not the underlying liability. Even if the Act does not afford a particular defendant immunity in a given scenario, the defendant nonetheless may not be liable as a matter of Georgia tort law more generally.

28

engagement with "local community economic development resources," as well as "the concert series' earlier funding through sponsorships" and "the current use of sponsors' banners and advertisements," as creating a fact question as to the owner's purpose (punctuation and emphasis omitted). But it is not clear that this evidence about Mercer's motivations — particularly the speculation that Mercer could benefit from economic development of the College Hill area — has anything to do with the nature of the activity in which Ms. Stofer was invited to engage or the nature of the property on the day of the concert. Indeed, the plaintiffs did not dispute that Ms. Stofer was invited onto the property to enjoy a free concert or that such an activity is generally recreational. In sum, at least some of the evidence cited by the Court of Appeals appears to be that of an *indirect* benefit that Mercer *might* receive as a result of the concert, consideration of which is improper under the standard that we clarify today. At the same time, there is at least some evidence of commercial activity occurring on the property around the time of the concert. Accordingly, we vacate the Court of

Appeals's judgment and remand the case for further proceedings to determine whether there is evidence in the voluminous record creating a dispute of fact as to whether Mercer invited Ms. Stofer to use its property for predominantly "recreational purposes."

*Judgment vacated and case remanded with direction. All the Justices concur, except Boggs, J., not participating.*

Decided June 24, 2019.

Certiorari to the Court of Appeals of Georgia -- 345 Ga. App. 116.

*Bendin Sumrall & Ladner, Alan J. Payne, Brian D. Trulock*, for appellant.

*Conley Griggs Partin, Ranse M. Partin, Davis S. Popper*, for appellees.

*Robertson, Bodoh & Nasrallah, Allison E. Thornton*, amicus curiae.