**FOURTH DIVISION**
**MCFADDEN, C. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2020**

# In the Court of Appeals of Georgia

A17A1515. MERCER UNIVERSITY v. STOFER, et al.

MARKLE, Judge.

After Sally Stofer was fatally injured in a fall while attending a free concert at Mercer University ("Mercer"), her estate and her children filed a wrongful death action against Mercer. *Mercer Univ. v. Stofer*, 306 Ga. 191, 192 (1) (830 SE2d 169) (2019). Mercer moved for summary judgment on the ground that it was immune from suit under the Recreational Property Act ("RPA"), OCGA § 51-3-20, et seq., Id. The trial court denied the motion, and we affirmed. *Mercer Univ. v. Stofer*, 345 Ga. App. 116 (812 SE2d 146) (2018). Thereafter, the Supreme Court of Georgia vacated our decision, and remanded the case with direction for this Court to determine whether the evidence of record creates a factual dispute "as to whether Mercer invited Ms. Stofer to use its property for predominantly recreational purposes" such that it

was entitled to immunity. (Punctuation omitted.) *Mercer Univ. v. Stofer*, 306 Ga. at 203-204 (6). Although the facts of the case are indeed tragic, upon reconsideration, we nevertheless must reverse the trial court's denial of Mercer's motion for summary judgment.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Reese v. Provident Funding Assoc., LLP*, 327 Ga. App. 266 (758 SE2d 329) (2014).

So viewed, the evidence, as more fully set out in our prior opinion, shows that Ms. Stofer and her sister attended a free concert, as part of Mercer's "Second Sunday" concert series, at a public park in Macon. As she was leaving the concert, Ms. Stofer fell backward on a staircase with no handrails, sustaining serious head injuries that ultimately led to her death.

The park was owned by the county, but Mercer had a permit to use it for the concert series. The free concert series was promoted and produced by Mercer's College Hill Alliance ("the Alliance"), a grant-funded division of Mercer with a stated mission of fostering revitalization and business growth in the neighborhood

2

surrounding the campus. The Alliance's aim was to attract investment in, and to create other potential revenue streams for, the university.

To improve the experience for the concertgoers, Mercer invited vendors to sell food and beverages. Mercer did not charge the vendors for their inclusion in the event, and the vendors kept any profits they made. Mercer procured sponsorships for overall marketing purposes and to defray the costs involved in promoting and producing the concert series. Sponsors were permitted to erect tents displaying their logos, and to otherwise promote their businesses, but did not sell merchandise. And, the Alliance gave away branded items to promote its other events.

1. Mercer contends that, under the Supreme Court's recent guidance, there is no factual dispute that the purpose for staging the free concert was predominantly recreational, and therefore, it was entitled to immunity under the RPA. We agree.

The RPA provides that, subject to certain exceptions not relevant here, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use,

3

structure, or activity on the premises to persons entering for recreational purposes."

OCGA § 51-3-22.[1]

> The Act further provides:
>
> Except as specifically recognized by or provided in Code Section 51-3-25, an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or (3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

OCGA § 51-3-23. The Act defines the term, "recreational purpose," by listing a noninclusive group of activities. See OCGA § 51-3-21 (4).

In *Stofer*, 306 Ga. at 196 (2), our Supreme Court clarified the relevant analysis under the RPA. As the Court explained, in order to establish whether a landowner maintained the requisite recreational purpose, and is therefore entitled to immunity under the RPA,

> the true scope and nature of the landowner's invitation to use its property must be determined, and this determination properly is informed by two related considerations: (1) *the nature of the activity* that constitutes the use of the property in which people have been invited to

---

[1] We note that the exceptions set forth in OCGA § 51-3-25 were amended during the pendency of this appeal; however, neither party contends that those exceptions apply to the facts of this case. See *Stofer*, 306 Ga. at 194 (2), n. 4.

engage, and (2) *the nature of the property* that people have been invited to use. In other words, the first asks whether the activity in which the public was invited to engage was of a kind that qualifies as recreational under the Act, and the second asks whether at the relevant time the property was of a sort that is used primarily for recreational purposes or primarily for commercial activity.

(Emphasis supplied.) *Stofer*, 306 Ga. at 196 (2). Importantly, a landowner's subjective profit motivations are irrelevant to the analysis. Id. at 200 (3) ("It is not the law – and we have never said that it was – that inviting people to use recreational property for recreational activities could still fail to qualify for immunity under the Act solely because the landowner had some sort of subjective profit motive in doing so.").

Here, the plaintiffs do not dispute that the nature of the activity, attending a free concert, was recreational.[2] See *Stofer*, 306 Ga. 203 (6). With regard to the nature of the property at the time of the concert, the plaintiffs point to the availability of food and beverages for purchase, the presence of the sponsors' tents and logos, and to the branding opportunity afforded to the Alliance, contending that this evidence is

---

[2] At the hearing on the motion for summary judgment, the plaintiffs conceded that they did not dispute that the activity was recreational; rather they argued that it had to be purely recreational to qualify for immunity under the RPA. See *Stofer*, 306 Ga. at 193 (1), n. 2. After our Supreme Court vacated our prior opinion and remanded the case for reconsideration, the parties submitted supplemental briefing. In their supplemental brief, the plaintiffs argued that the activity was also commercial in nature. Even assuming that they could make this argument in light of their previous concession, we are not persuaded for the reasons set forth above.

5

sufficient to raise a question of fact as to whether Mercer's purpose in staging the concert series was predominantly commercial.

We are not convinced. As our Supreme Court made clear, the property owner's subjective intent is not a proper consideration; nor is the fact that the owner might have obtained an indirect financial benefit. *Stofer*, 306 Ga. at 199-201 (3) - (4). The relevant question is whether "the landowner actually invited people onto the property (directly or indirectly) to do something 'recreational,' or whether people have instead been allowed onto the property to engage in commercial activity." (Emphasis omitted.) Id. at 196 (2). Viewed in this light, the evidence in the record shows that both the nature of the activity and the nature of the property at the time of the concert were purely recreational.[3]

The park itself is owned by the county and open to the public without limitation during the concerts. The concertgoers were not required to buy food and drink; rather

---

[3] The plaintiffs' reliance on *Atlanta Committee for the Olympic Games, Inc. v. Hawthorne*, 278 Ga. 116 (598 SE2d 471) (2004), disapproved of by *Stofer*, 306 Ga. at 198 (2), is misplaced. As our Supreme Court clarified in *Stofer*, the language in *Hawthorne* "confused matters" and a jury question exists only where there is a factual question regarding the nature of the activity and the nature of the property. 306 Ga. at 198-199 (2). But that factual question does not include consideration of any indirect financial benefit or of the owner's subjective intent in inviting the public onto the property. *Stofer* 306 Ga. at 200-201 (3) - (4).

the event website encouraged them to bring picnics. Also, there is no evidence that the concert series was organized for the benefit of the vendors or the sponsors; instead, the sponsors donations were required to assist in offsetting the expenses of staging the concert series. See *Matheson v. Ga. Dept. of Transp.*, 280 Ga. App. 192, 195 (1) (b) (633 SE2d 569) (2006).

To the extent that the concert series may have increased Mercer's name recognition and good will in the community, potential student interest in attending the university, or the likelihood that it would receive future grant funding, such speculative considerations and subjective motivations are not relevant to our analysis. *Stofer*, 306 Ga. at 201-202 (4) (disapproving prior case law "that could be read to require consideration of evidence that a landowner was motivated by the possibility that it would obtain *indirect* financial benefits from allowing the public to use its land in determining whether that invitation was for 'recreational purposes' under the Act.") (citation omitted; emphasis in original).

Notably, there is no evidence that Mercer made a profit from the vendors, the sponsors, or the Alliance's branded give-aways, nor is there evidence that it received a direct financial benefit from the concert series whatsoever. The fact that there might have been an indirect commercial benefit is not sufficient to create a factual question.

7

*Stofer*, 306 Ga. at 192. Moreover, Mercer University, including its Alliance division, is not "in the business of entertainment" that would create a factual question about the recreational nature of the event. Cf. *Cedeno v. Lockwood, Inc*., 250 Ga. 799, 801 (2) (301 SE2d 265) (1983).

Simply put, having thoroughly reviewed the record, we conclude that there is no conflict in the evidence for a jury to resolve; rather, all of the evidence properly under consideration shows that the nature of the activity and the nature of the property at the time of the concert were recreational.[4] Accordingly, under the analysis

---

[4] The plaintiffs' attempt to distinguish *Word of Faith Ministries, Inc. v. Hurt*, 323 Ga. App. 296 (746 SE2d 777) (2013) and *Matheson* from the case at hand is unpersuasive. To the contrary, both cases support our holding above. In *Hurt*, a church sought immunity under the RPA against liability for injuries sustained by a child during the church's free youth festival, and the child's mother argued that the RPA did not apply because the church had a commercial purpose for organizing the festival. 323 Ga. App. at 296-298 (1). In accord with our analysis above, we disagreed:

> even if the festival had the effect of encouraging some people to consider joining the church, thereby allowing the church to eventually or potentially profit by increased tithes or gifts to the church from those new members, the connection between the festival and the church's eventual and hypothetical profit is far too tenuous to render the venture commercial.

(Citation and punctuation omitted.) Id. at 298 (1). Similarly, in *Matheson*, we found that a State-run highway rest area was recreational in nature despite the presence of a tourist information center and tourist brochures, noting that "[e]ven if the activity

clarified by our Supreme Court, Mercer is entitled to immunity under the RPA, and

we therefore reverse the trial court's denial of summary judgment.

*Judgment reversed. McFadden, C. J., and Coomer, J. concur*.

---

at the information center is viewed as commercial in nature, the commerce involved arises from some possible future increase in the profits earned by *local businesses*, not the State." (Punctuation omitted; emphasis in original.) 280 Ga. App. at 195 (1) (b).