NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.



SUPREME COURT OF GEORGIA
Case No. S23C0133

July 5, 2023

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

IN THE INTEREST OF R. J. A., a child.

The Supreme Court today denied the petition for certiorari in this case.

*All the Justices concur.*

Court of Appeals Case No. A22A1062

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

, Clerk

PINSON, J., concurring in the denial of certiorari.

I agree that we should not grant review of the Court of Appeals' decision in this case. I write separately to flag a narrow issue having to do with how to understand and apply the holdings of an appellate court, which may warrant review in an appropriate case.

The question presented in this case is whether a superior court or a juvenile court had jurisdiction over the underlying prosecution against R. J. A., a juvenile. A juvenile charged with a crime within the jurisdiction of the superior court "who is detained" is entitled to have the charge presented to the grand jury "within 180 days of the date of detention." OCGA § 17-7-50.1 (a). If the charge hasn't been presented after 180 days of detention, the case must be transferred to juvenile court. Id. at § 17-7-50.1 (b). In this case, R. J. A. was arrested and detained on March 1, 2019, then released on bond just over a month later, but on the special conditions that he wear an ankle monitor that reported his location, and that he remain at home except to attend school, work, necessary legal and medical appointments, and one religious service per week. He was then

2

indicted on October 23, 2019, more than 180 days after he was arrested and initially detained. So which court has jurisdiction turns on whether R. J. A. was "detained" during his period of monitored home confinement. If so, the juvenile court should have exercised jurisdiction. If not, jurisdiction rested with the superior court.

In addressing this jurisdictional question, the Court of Appeals properly looked to our decision in *State v. Coleman*, 306 Ga. 529 (832 SE2d 389) (2019). In *Coleman*, the juvenile defendant was likewise arrested and detained, and then released on bond just over a month later. Almost two years later, he was indicted, and the defendant moved to transfer his case to juvenile court under the same statute at issue here, OCGA § 17-7-50.1. The superior court granted the motion, but we reversed. We explained that this statute did not require transfer to juvenile court unless the defendant was detained for the 180-day period, and "if a child is released on bond or otherwise, they are no longer 'detained' within the meaning of the statute." *Coleman*, 306 Ga. at 531. Applying *Coleman*, the Court of Appeals held that, "because R. J. A. was released and remained on

3

bond prior to the running of 180 days, he was not detained within the meaning of OCGA § 17-7-50.1." *Interest of R. J. A.*, 365 Ga. App. 118, 123 (3) (b) (877 SE2d 673) (2022). So, the court held, "the case did not run afoul of the time limitation set by that Code section," and "the superior court continued to have exclusive jurisdiction over the case." Id.

I agree with all of this. But along the way to this decision— which, by itself, seems to me a faithful and reasonable application of *Coleman*—the Court of Appeals took an extra step that gives me pause. In explaining why "*Coleman* forecloses R. J. A.'s argument," the court noted, "Although that *decision* does not speak directly to the question that the Supreme Court left open in Johnson, the *archival records* of *Coleman* reveal that, like R. J. A., the defendant in that case was released from bond with conditions including home confinement." Id. at 122 (3) (b) (emphasis added). In other words, the court looked beyond the *Coleman* opinion itself to the record of the case to determine the breadth of its holding. In explaining this step, the court noted that both the Court of Appeals and our Court

4

"occasionally look to archived records to distinguish authority." See id. at 122 (3) (b) n.1 (citing in support *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986) and *Little Ocmulgee Elec. Membership Corp. v. Lockhart*, 212 Ga. App. 282 (441 SE2d 796) (1994)).

The Court of Appeals was not wrong about that: our courts have sometimes looked to a case's archival records to help determine the scope of a holding in past decisions. See also, e.g, *Ware v. State*, 305 Ga. 457, 460 (2) (826 SE2d 56) (2019). But I have real doubts about whether that practice is appropriate. Speaking broadly, a holding in an appellate opinion is a determination on a matter of law that is necessary to the decision in question. See Bryan A. Garner, et al., The Law of Judicial Precedent 44 (2016) ("A holding consists of the 'court's determination of a matter of law pivotal to its decision.'" (quoting Black's Law Dictionary 849 (Bryan A. Garner ed., 10th ed. 2014))). It is not always easy to figure out what parts of an appellate decision make up its holding. Questions about whether particular facts or reasoning are important or necessary to a

decision, or just how necessary something must be to count as part of the holding, can be hard to answer. See, e.g., *Mercer Univ. v. Stofer*, 306 Ga. 191, 191-192, 200-201 (4) (830 SE2d 169) (2019) (explaining that the Court of Appeals was "led astray" by an "acute problem from our case law" arising out of language in *Atlanta Comm. for the Olympic Games, Inc. v. Hawthorne*, 278 Ga. 116 (598 SE2d 471) (2004), that was not necessary to the holding in that case). See also Charles W. Tyler, "The Adjudicative Model of Precedent," 87 U. Chi. L.R. 1551, 1552-1553 (Sept. 2020) (noting that it is "highly contestable" what it means for a statement of law to be "necessary for the outcome" of a case). But it seems reasonably clear to me that the universe of things that are potentially necessary to an appellate court's decision—and thus make up its holding—is contained within that court's opinion. If a court does not see fit to mention a particular fact in its opinion and otherwise provides reasoning for its decision, that seems like a conclusive sign that the missing fact is not necessary to the decision and therefore is not part of the court's holding. See Garner, supra at 81 (noting that when an

opinion does not lay out all the facts that went into the decision, "the full facts"—that is, those not in the opinion—"aren't likely to be much help when the court hasn't left any evidence that the missing facts played a role in its decision"). In fact, other decisions of the Court of Appeals are in accord with this understanding. See *MOM Corp. v. Chattahoochee Bank*, 203 Ga. App. 847, 847-848 (2) (418 SE2d 74) (1992) ("The decisions of our appellate courts must speak for themselves, and the archival records are not available to litigants in other cases to raise questions about facts or issues not stated or decided in them."); *Chan v. W-East Trading Corp.*, 199 Ga. App. 76, 77 (3) (403 SE2d 840) (1991) ("[I]t is the facts contained within an officially reported case which have legal significance when applying the case as precedent, not bare assertions of facts found within the briefs of the parties and not contained in the text of the reported case."). See also *Humphrey v. Wilson*, 282 Ga. 520, 539 (652 SE2d 501) (2007) (Carley, J., concurring in part and dissenting in part) (noting that when the majority opinion explained why a prior

7

precedent did not control, one of the majority's reasons was grounded in a fact that was not stated in the prior opinion).

This conclusion makes practical sense, too. Appellate courts issue opinions that explain our decisions because those decisions are binding, and courts, litigants, and the public need to know the legal rules that bind them. It would be both strange and unfortunate if the public had to review not only our opinions, but also the archival records of our cases, to know what the law is.

In short, I doubt it is necessary or proper for a court to review the archival record of a case to determine whether the holding of an appellate decision in that case controls a legal question currently before the court. I do not think answering that question would make a difference in this case in light of *Coleman*'s clear holding, so I agree with the Court's decision to deny certiorari. But we might consider addressing the question, if it arises again, in an appropriate case.

I am authorized to state that Justice Warren joins in this concurrence.