**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 15, 2025**

# In the Court of Appeals of Georgia

A25A0936. THE MAYOR AND ALDERMEN OF THE CITY OF
    SAVANNAH v. McLAMB.

RICKMAN, Presiding Judge.

This is a trip and fall action brought by Gloria McLamb against The Mayor and Alderman of the City of Savannah (collectively "the City"). The City filed a motion for summary judgment, which the trial court denied. On appeal, the City contends that, inter alia, the trial court erred by holding the Georgia Recreational Property Act ("the RPA") OCGA § 51-3-20 et seq., was unconstitutional and that the RPA did not bar McLamb's claims against the City.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and

all inferences in a light most favorable to the nonmoving party." (Citation and punctuation omitted.) *North Fulton Community Charities v. Goodstein*, 367 Ga. App. 576, 577 (887 SE2d 646) (2023).

So viewed, the record shows that McLamb visited Savannah with her family in April 2019. During her stay, McLamb and several members of her family took a trolley tour around Savannah to do some sightseeing. Following the trolley tour, she and her family visited the historic Davenport House and decided to walk back to their hotel. McLamb and her family's route took them onto the sidewalk of Savannah's National Historic Landmark District. While walking as a group, McLamb tripped on a raised paver in the sidewalk. McLamb deposed that she did not see the paver prior to her fall.

The City moved for summary judgment arguing that, inter alia, the RPA barred McLamb's claims against the City.[1]

---

[1]     [A]n owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or (3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

The trial court, however, found that questions of fact existed regarding whether the sidewalk was recreational property and held that applying the RPA to McLamb's claims would violate the Georgia Constitution's equal protection clause, agreeing with McLamb's argument that the application of the RPA would result in disparate treatment between Savannah tourists and local residents.[2] See. Ga. Const. Art. of 1983, Art.I, Sec. I, Para II.

The City contends that the trial court erred by holding that the RPA was unconstitutional and that the RPA did not bar McLamb's claims against the City.

"The purpose of the RPA is to encourage property owners to make their property available to the public for recreational purposes by limiting the owners' liability" (Citation and punctuation omitted.) *Carroll v. City of Carrollton*, 280 Ga. App. 172, 173-74 (633 SE2d 591) (2006). Under the RPA, "an owner of land owes no

---

OCGA § 51-3-23.

[2] While the trial court held the RPA unconstitutional as applied, jurisdiction is properly with this Court as the Supreme Court has previously upheld the RPA as constitutional and rejected a similar challenge in *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113 (537 SE2d 345) (2000). See *Hodges v. Hartford Ca. Ins. Co.*, 176 Ga. App. 284, 285 (335 SE2d 672) (1985) (holding that this Court has jurisdiction to review an appellant's claim regarding the allegedly discriminatory application of a statute that has previously been upheld as constitutional).

duty of care to keep the premises safe for entry or use by others for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on the premises to persons entering for recreational purposes." OCGA § 51-3-22. The RPA provides that recreational purposes include many activities such as "viewing or enjoying historical, archeological, scenic, or scientific sites." OCGA § 51-3-21 (4). In cases like this, where the property and activity thereon is of mixed use, in that commercial interests are mixed with recreational activities, our Supreme Court has adopted the following balancing test to determine whether an activity is recreational:

> The test requires that all social and economic aspects of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence. This test does not preclude consideration of the user's subjective assessment of the activity, but . . . the user's assessment is not the controlling factor.

(Citation and punctuation omitted.) *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 117 (2) (537 SE2d 345) (2000). Whether the RPA applies is a question of law for the trial court, but where the evidence conflicts regarding the

4

purpose of the property, the fact finder must resolve the conflict. See *Mercer Univ. v. Stofer*, 306 Ga. 191, 202 (5) (830 SE2d 169) (2019) (*"Stofer I"*).

Regarding the RPA's constitutionality, our Supreme Court found that the RPA does not unconstitutionally violate an individual's rights to due process and equal protection. See *Anderson*, 273 Ga. at 115 (1) (b). In *Anderson*, the Supreme Court rejected due process and equal protection challenges to the RPA because it "reasonably promotes the legitimate governmental purpose of making recreational property more accessible to the public and the classification of the RPA draws between those persons injured while on recreational property and those persons injured on other premises is rationally related to this legitimate purpose." Id.

Turning to whether the City is entitled to immunity under the RPA, our Supreme Court has adopted the following two part test:

> the true scope and nature of the landowner's invitation to use its property must be determined, and this determination properly is informed by two related considerations: (1) the nature of the *activity* that constitutes the use of the property in which people have been invited to engage, and (2) the nature of the *property* that people have been invited to use. In other words, the first asks whether the activity in which the public was invited to engage was of a kind that qualifies as recreational under the Act, and the second asks whether at the relevant time the

property was of a sort that is used primarily for recreational purposes or primarily for commercial activity.

*Stofer I*, 306 Ga. at 196 (2) (emphasis in original).

In *Stofer I,* our Supreme Court remanded the case back to this Court to determine whether a landowner defendant inviting the plaintiffs to a free, outdoor concert in a public park was generally "recreational" under the RPA. *Stofer I*, 306 Ga. at 203-204 (6). On remand, this Court held that the defendant was entitled to the protections of the RPA. See *Mercer Univ.* v. *Stofer*, 354 Ga. App. 458, 462- 463 (841 SE2d 224) (2020) (*"Stofer II").* This Court found that the nature of the activity, attending a free concert in a public park, was recreational. See id. Additionally, this Court found that the nature of the property at the time of the concert was likewise recreational, despite the availability of commercial activity during the event. See id.

Here, the court found a factual dispute as to whether the sidewalk was offered for a recreational purpose, relying on evidence of nearby businesses in the historic district and McLamb's denial that she was sightseeing at the time of her fall. McLamb, however, fell on a sidewalk in Savannah's National Historic Landmark District while walking back to her hotel after taking a trolley tour. Important here is not what

6

McLamb denied, but what she admitted: that she chose to walk back to her hotel instead of riding the trolley because she enjoyed sightseeing and wanted to see the parks, old buildings, and big trees. In fact, McLamb deposed that she was looking up a tree when she fell. This evidence clearly and objectively reflects the purpose of her visit and the nature of her activities. And the RPA specifically provides that recreational purposes include many activities such as "viewing or enjoying historical, archeological, scenic, or scientific sites." OCGA § 51-3-21 (4). Thus, the record, and in particular McLamb's own deposition testimony, make it clear that she was engaging in activities that are expressly covered by statute. The nature of the activity was, objectively, recreational.

Next, looking at the nature of the property, "the relevant question is whether the landowner actually invited people onto the property (directly or indirectly) to do something 'recreational,' or whether people have instead been allowed onto the property to engage in commercial activity." (Citation and punctuation omitted). *Stofer II*, 354 Ga. App. at 461. The evidence is undisputed that the sidewalk where McLamb fell was owned by the City and located in Savannah's National Historic Landmark district and that there is no fee charged to engage in sightseeing. Although the City

may gain indirect financial benefits from nearby businesses, "the fact that there might have been an indirect commercial benefit is not sufficient to create a factual question," as to the nature of the property.[3] *Id.*

The evidence in the record shows that both the nature of the activity McLamb was engaged in, and the nature of the property that she was on, were recreational. See *Stofer II*, 354 Ga. App. at 461. Accordingly, the City is entitled to immunity under the RPA and the trial court erred by denying its motion for summary judgment. See *Stofer II*, 354 Ga. App. at 462 ("Simply put, having thoroughly reviewed the record, we conclude that there is no conflict in the evidence for a jury to resolve; rather, all of the evidence properly under consideration shows that the nature of the activity and the nature of the property at the time of the concert were recreational."); *Julian v. City of Rome*, 237 Ga. App. 822, 823 (1) (517 SE2d 79) (1999) (city-owned walkway was used for recreational purposes under the RPA where the city intended the walkway as an extension of a park and to provide access to the park and no fee was charged for use of the walkway, even though the city may have derived an indirect financial benefit

---

[3] We also note that our Supreme Court in *Stofer I* explained that the fact that an owner may have obtained an indirect financial benefit is not even a proper consideration. *Stofer I*, 306 Ga. at 200-202 (4).

because the walkway ended in the city's downtown and provided access to businesses).

*Judgment reversed. Gobeil and Davis, JJ., concur.*